[933 NE2d 194, 906 NYS2d 796]

In the Matter of a Trust Created by CHARLOTTE P. HYDE, Deceased. GLENS FALLS NATIONAL BANK AND TRUST COMPANY et al., as Trustees of a Trust Created by CHARLOTTE P. HYDE, Deceased, Respondents; CAROL J. WHITNEY, as Executor of LOUIS H. WHITNEY, Deceased, et al., Respondents, and MARY W. RENZ et al., Appellants. (And Another Proceeding.)

Argued June 2, 2010; decided June 29, 2010

**POINTS OF COUNSEL**

*Nolan & Heller, LLP,* Albany (*David H. Wilder* of counsel), for appellants. I. Based on the pro tanto rule and their lack of any interest in the outcome of the Whitneys' surcharge proceedings, the Renzes' respective interests in trust principal should not be required to bear any portion of the litigation expenses incurred in successfully defending the trustees against the Whitney's

objections. (*Matter of Garvin,* 256 NY 518; *Matter of Ellensohn,* 258 App Div 891; *Matter of Stumpp,* 153 Misc 92; *Matter of Harmon,* 5 Misc 2d 308; *Matter of Newhoff,* 107 AD2d 417; *Matter of Saxton,* 179 Misc 2d 681; *Matter of Janes,* 165 Misc 2d 743, 223 AD2d 20, 90 NY2d 41; *Matter of Penney,* 60 Misc 2d 334; *Matter of Urbach,* 252 AD2d 318; *Matter of Antoinette Frances G.,* 135 Misc 2d 1034.) II. In any event, the doctrine of stare decisis is not absolute, and in this case, compelling circumstances warrant departing from *Matter of Dillon* (28 NY2d 597 [1971]) construction of SCPA 2110. (*Cenven, Inc. v Bethlehem Steel Corp.,* 41 NY2d 842; *Matter of Eckart,* 39 NY2d 493; *People v Hobson,* 39 NY2d 479; *Zappone v Home Ins. Co.,* 55 NY2d 131; *Matter of Meyer,* 209 NY 386; *Matter of Higby v Mahoney,* 48 NY2d 15; *Matter of Schinasi,* 277 NY 252; *Matter of Baxter [Gaynor],* 196 AD2d 186; *Matter of Burns,* 126 AD2d 809; *Matter of Heilbronner,* 39 Misc 2d 912.) III. On common-law grounds as well, a non-objecting beneficiary's interest in the trust estate should not be required to bear any portion of the litigation expenses incurred by a trustee in successfully defending himself against an objection where the pro tanto rule applies. (*Matter of Ungrich,* 201 NY 415; *Matter of Rose BB.,* 16 AD3d 801; *Parker v Rogerson,* 49 AD2d 689; *Matter of Campbell,* 138 AD2d 827; *Matter of Garvin,* 256 NY 518.) IV. Alternatively, the Surrogate has the power in equity to direct that the Whitneys' respective interests in trust principal be charged with all of the litigation expenses incurred in successfully defending the Hyde and Cunningham trustees against the Whitneys' objections.

*Judge & Duffy,* Glens Falls (*H. Wayne Judge* and *Monica A. Duffy* of counsel), for Carol J. Whitney and others, respondents. I. This appeal lacks merit. (*Matter of Urbach,* 252 AD2d 318; *Matter of Dillon,* 28 NY2d 597; *Matter of Penney,* 60 Misc 2d 334.) II. The estate of Louis H. Whitney is not a proper party to this appeal. III. The relief requested against the Whitney children in the Cunningham trust accounting is also unavailable. IV. The allocation of legal fees and expenses among litigating legatees is a legislative, not a judicial, matter. (*Matter of Povlsen,* 62 Misc 2d 239.) V. The facts of this case compel the application of the established law. VI. The Whitney objectants had an affirmative duty to defend the residuum of these trusts under the circumstances presented here and should not, in equity, be penalized for doing so. (*Meinhard v Salmon,* 249 NY 458.) VII. The complete record of these proceedings must be "unsealed" and any stay order of final distribution must be vacated.

*Putney Twombly Hall & Hirson LLP,* New York City (*Christopher M. Houlihan* of counsel), for Glens Falls National Bank and Trust Company, respondent.

*McNamee, Lochner, Titus & Williams, P.C.,* Albany (*G. Kimball Williams* of counsel), for Banknorth, N.A., respondent.

## OPINION OF THE COURT

Chief Judge LIPPMAN.

We hold that Surrogate's Court Procedure Act (SCPA) § 2110 grants the trial court discretion to allocate responsibility for payment of a fiduciary's attorney's fees for which the estate is obligated to pay—either from the estate as a whole or from shares of individual estate beneficiaries. In so doing, we overrule our holding in *Matter of Dillon* (28 NY2d 597 [1971]).

We consequently modify the order of the Appellate Division affirming the order of the Surrogate and remit to the Surrogate's Court for de novo consideration of allocation of the trustees' counsel fees.

I

This dispute developed out of a joint trial concerning intermediate accountings of two trusts. The first proceeding involved a testamentary trust created by Charlotte P. Hyde (Hyde Trust). At the outset of the trust accountings in 2001, Hyde's grandchildren, Mary Renz and her brother Louis H. Whitney, were the two life income beneficiaries of two equal shares of the Hyde Trust. Mary Renz's three children (Renz Children) and Louis H. Whitney's two children (Whitney Children) each possessed a presumptive one-fifth remainder interest in both the Mary Renz Share and the Louis H. Whitney Share that would vest upon the death of Mary Renz and Louis H. Whitney, respectively. Upon Louis H. Whitney's death in January 2008,[1] the Renz Children and the Whitney Children each received a one-fifth interest in the principal of the Louis H. Whitney Share of the Hyde Trust.

The second proceeding concerned an inter vivos trust created by Nell Pruyn Cunningham (Cunningham Trust). The Cunningham Trust term is measured by the lives of two of

---

1. Following Louis H. Whitney's death, his widow and executor, respondent Carol J. Whitney, was substituted for him in both proceedings by order entered in April 2008. The Whitney Children were simultaneously joined as respondents in the second proceeding.

Cunningham's grandnephews. In 2003, when the Cunningham accounting commenced, Mary Renz and Louis H. Whitney were each income beneficiaries and presumptive remaindermen of undivided one-sixth shares of the Cunningham Trust. The Mary Renz Share and the Louis H. Whitney Share were to pass to their living issue per stirpes upon the death of Mary Renz or Louis H. Whitney. Thus, upon Louis H. Whitney's death, the two Whitney children became the income beneficiaries and presumptive remaindermen of their father's undivided one-sixth share of the Cunningham Trust.

The two proceedings arose out of objections made to the Hyde trustees' accountings by Louis H. Whitney and the Whitney Children (the Whitneys) and objections made to the Cunningham trustees' accountings by Louis H. Whitney (and carried on by the Whitney Children and Louis H. Whitney's executor after his death). The Whitneys sought to deny the Hyde trustees and the Cunningham trustees their commissions and surcharge them on the basis of their alleged failure to diversify the Trusts' assets, among other objections.

Mary Renz and the Renz Children (the Renzes) did not participate in the Whitneys' objections to trustee conduct in either the Hyde or the Cunningham Trust accounting proceedings. Neither did any of the other income beneficiaries or remaindermen of the Cunningham Trust, aside from Louis H. Whitney (and later his executor and the Whitney Children), interpose objections to the accounting of that Trust.

In advance of the joint trial on the Whitneys' objections, the Renzes filed an acknowledgment, attesting that they were non-objectors; and thus, under the Pro Tanto Rule,[2] they would not be entitled to share in any surcharges that might be imposed on the Hyde or Cunningham trustees. The Renzes simultaneously filed a cross motion seeking to require that all future trustees' counsel fees be deducted exclusively from the objecting beneficiaries' shares of the Hyde Trust and Cunningham Trust assets. The Renzes' cross motion also sought to reserve the right to seek reallocation of and reimbursement of the Hyde Trust for all counsel fees that had already been advanced from the Renzes' interests in the Hyde Trust.

---

**2.** The court-made Pro Tanto Rule dictates that beneficiaries who did not file objections to a fiduciary's conduct are not entitled to share in the surcharge that accrues to the estate or trust when other beneficiaries file successful objections. The rule sought to prevent non-objecting beneficiaries from being rewarded for their quiescence while their co-beneficiaries defended the estate assets (*see Matter of Garvin*, 256 NY 518 [1931]).

Surrogate's Court dismissed all of the Whitneys' objections. As to the question of attorney's fees, the court acknowledged that the Pro Tanto Rule had applied, which meant that the non-objecting beneficiaries had not stood to gain from the success the Whitneys' objections might have had. Yet, the court stated it was constrained by *Dillon* to treat the trusts as single entities for purposes of trustee indemnification. Thus, regardless of potential unfairness to the Renz beneficiaries who abstained from the costly litigation, the Surrogate's Court ordered that the trustees' counsel fees be disbursed from the corpus of each trust generally. As a result, the Renzes' shares of the Hyde and Cunningham Trusts were held responsible for more than $700,000 in attorney's fees incurred by the trustees.

The Appellate Division affirmed, citing the construction of SCPA 2110 articulated in *Dillon* and finding no basis to distinguish this case (61 AD3d 1018 [3d Dept 2009]).

## II

SCPA 2110 (2) provides: "The court may direct payment [for legal counsel rendered a fiduciary in connection with the performance of his or her fiduciary duties] from the estate generally or from the funds in the hands of the fiduciary belonging to any legatee, devisee, distributee or person interested."[3]

We first construed SCPA 2110 (2) in our 1971 memorandum decision, *Matter of Dillon* (28 NY2d 597 [1971]). In *Dillon*, a legatee under a testator's will that had been admitted to probate challenged probate of a subsequent will that increased the number of legatees who would inherit and thereby reduced the original legatee's portion of the testator's estate. The Surrogate's Court refused to vacate probate and charged the

---

3. The present SCPA 2110 was enacted in 1966 as part of a recodification of the Surrogate's Court Act. The original Surrogate's Court Act § 231-a, adopted in 1923, stated in relevant part, "The surrogate may direct payment therefor from the estate generally or from the funds in the hands of the representative belonging to any legatee, devisee, distributee or person interested therein." (L 1923, ch 526.) SCPA 2110, like Surrogate's Court Act § 231-a before it, provides for compensation out of estate funds for a fiduciary that accrues counsel fees in the course of fulfilling its fiduciary duties to the estate. Although the fiduciary conducts the litigation and may have all the hallmarks of a party to a suit (especially when the fiduciary is defending itself in a surcharge proceeding), the estate is ordinarily obligated to indemnify the fiduciary for attorney's and litigation fees (*see e.g. Wetmore v Parker*, 52 NY 450 [1873]; *cf. Matter of Wadsworth*, 275 NY 590 [1937]). The rationale is that the actions of fiduciaries, absent misconduct, are undertaken to benefit the estate, and the estate should therefore be charged with the fiduciaries' costs.

objecting legatee's share of the estate with the executor's legal fees expended in defending probate of the later will. The legatee then appealed, asserting that legal fees should be allocated to the whole estate generally, not to the legacy of an individual party. Ultimately, this Court held that "SCPA 2110 does not authorize payment for legal services rendered a party to be charged against the share of other individual parties. Accordingly, although appellant lost in this litigation, the legal fees of the executor as her adversary were not chargeable to her personally" (*Dillon*, 28 NY2d at 599).

Although the decision in *Dillon* offers little rationale for its conclusion, the statutory interpretation requiring the corpus of the estate generally, and not the shares of individual beneficiaries, to pay for fiduciaries' counsel seems guided by the common-law American Rule. In brief, the American Rule requires all parties to a controversy—the victors and the vanquished—to pay their own "incidents of litigation" (*Chapel v Mitchell*, 84 NY2d 345, 349 [1994], quoting *Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491 [1989]). Thus, the unsuccessful objectant, under the American Rule, was required to pay only its own attorney's fee, not the executor's attorney's fees as well, which were paid for by the estate.

However, the *Dillon* decision, finding that SCPA 2110 required that the whole of the estate be charged with the executor's counsel fees, in spite of the fact that actions of the objecting party did not effect a benefit to the estate and bordered on the vexatious, seems to have ignored the plain meaning of the statute and departed from the earlier jurisprudence of this Court.

In interpreting SCPA 2110, we bear in mind that it is "presumed that no unjust or unreasonable result was intended and the statute must be construed consonant with that presumption" (*Zappone v Home Ins. Co.*, 55 NY2d 131, 137 [1982], citing *Matter of Breen v New York Fire Dept. Pension Fund*, 299 NY 8, 19 [1949] and McKinney's Cons Laws of NY, Book 1, Statutes § 143). The Legislature's intentions should normally be ascertained from a careful reading of the statute itself, especially where, as here, the language is unambiguous, and the legislative history reveals nothing that would counsel an alternative interpretation (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 92 [b]). On its face, the statute provides the trial court with discretion to disburse funds from any beneficiary's share in the estate—and not exclusively from "the estate generally."

In addition to departing from the plain meaning of the statute, *Dillon* did not focus on the considerations of fairness that guided *Matter of Ungrich* (201 NY 415 [1911]) and its progeny (*e.g. Matter of Garvin*, 256 NY 518 [1931]; *Matter of Bishop*, 277 App Div 108 [1st Dept 1950]; *see also Matter of Burns*, 126 AD2d 809 [3d Dept 1987]). In *Ungrich*, the plaintiff, a life tenant under a testamentary trust, brought an action for a trust accounting and to remove the trustees for alleged misconduct. The Surrogate's Court there had dismissed the objectant's challenges. Regarding the question of attorney's fees, we determined as a matter of common law, prior to any statute on the subject, that the court should have discretion to disburse fees from the estate generally or from individual shares, depending on the circumstances of each case. We stated that trustees should have "an opportunity to prove their expenses and the circumstances under which they were incurred," and at that point, "it would be for the court to determine on the facts of the case what part, if any, of such expenditures should be allowed to the [trustees] and charged against the life tenant and what part against the corpus of the estate" (*Ungrich*, 201 NY at 420).

Because we find that this construction is more faithful to the statute, our precedents prior to *Dillon*, and fairness, we choose to restore the plain meaning of SCPA 2110 (2): to place discretion in the hands of the trial courts to allocate expenses when ordering that fiduciaries be indemnified by an estate for attorney's fees.[4] The trial court's discretion extends to the timing and structure of deducting funds against the present and future interests of the beneficiaries.

In cases where a fiduciary is to be granted counsel fees under SCPA 2110 (2), the Surrogate's Court should undertake a multi-factored assessment of the sources from which the fees are to be paid.[5] These factors, none of which should be determinative, may include: (1) whether the objecting beneficiary acted solely in his or her own interest or in the common interest of the estate; (2) the possible benefits to individual

---

4. This holding does not involve or affect SCPA 2301 (4), which provides for costs and allowances that may be made payable by any party *personally*.

5. This holding does not involve or affect the Surrogate's discretion to make the underlying determination of whether or not the fiduciary is entitled to charge its counsel fees to the estate, or whether or not the amount of counsel fees is reasonable. In assessing the reasonableness of a fee award, the Surrogate should consider such factors as the extent of services provided, the amount of time spent on the matter, the level of sophistication required, and the size of the estate relative to the amount of fees.

beneficiaries from the outcome of the underlying proceeding; (3) the extent of an individual beneficiary's participation in the proceeding; (4) the good or bad faith of the objecting beneficiary; (5) whether there was justifiable doubt regarding the fiduciary's conduct; (6) the portions of interest in the estate held by the non-objecting beneficiaries relative to the objecting beneficiaries; and (7) the future interests that could be affected by reallocation of fees to individual beneficiaries instead of to the corpus of the estate generally (*see e.g. Matter of Greatsinger*, 67 NY2d 177, 183-184 [1986] [providing factors to guide courts in discretionary allocation of attorney's fees among multiple trusts in estate litigation]). Inasmuch as Surrogate's Court never exercised its discretion, we remit to allow it the opportunity to do so.

Accordingly, the order of the Appellate Division should be modified, with costs to appellants, by remitting to Surrogate's Court for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order modified, etc.