OPINION OF THE COURT
John S. Hall, Jr., S.
The Finch Pruyn paper company (hereinafter referred to as Finch Pruyn) was, until recently, a large family-owned paper manufacturing company located in Glens Falls, New York. Through a series of successful innovations, including the development of a type of white, opaque paper requisite for making photocopies, the company flourished for more than a century. Unfortunately, the paper industry fell into a downturn *663 during the 1990s when many paper mills were forced to close and the value of Finch Pruyn greatly diminished.
Charlotte Pruyn Hyde and Nell Pruyn Cunningham were the descendants of one of the founders of Finch Pruyn. During the time that the mill was flourishing, the sisters established several trusts which were funded primarily (and some, exclusively) with their shares of Finch Pruyn corporate stock. During the mid-2000s, after the decline in the paper market, intermediate accountings were filed by the trustees. These were followed by objections alleging, inter alia, that the investment portfolios of the trusts were not diversified and as a result, the trusts suffered a significant loss in value.
Prior to the trial, one family of beneficiaries, the Renz family, chose to withdraw their objections to the accounting and acknowledged in writing that they would not, and could not, share in any surcharge awarded against the trustees if the other objectants were successful, in accordance with a common-law trust doctrine known as the pro tanto rule. On the other hand, the Whitneys, the remaining family of beneficiaries, contended that the trustees should have sold 95% of the Finch Pruyn stock prior to 1995. As a result of their allegedly negligent failure to do so, the Whitneys contended that the trusts lost tens of millions of dollars in value.
In opposition to the Whitneys’ motion for summary judgment, the trustees maintained that Finch Pruyn had a unique capital structure preventing its sale, that a fair price could not be obtained if they tried to liquidate the Finch Pruyn stock because there were no buyers for the stock, nor any public market in which to sell it. They argued that a sale of the Finch Pruyn stock would have been detrimental to the interests of the beneficiaries, who would suffer adverse tax consequences due to significant unrealized capital gains. Partial summary judgment was granted to the objectants holding that the trusts were not diversified and that the governing trust instruments did not prohibit diversification. At a lengthy trial involving 17 days of testimony, the court heard many witnesses, including expert testimony by Professor Kenneth Joyce, one of the authors of the Prudent Investor Act, and Lawrence Griswold, a senior trust officer of the Lincoln Chase Bank, on behalf of the objectants. Following the trial this court issued a decision dated January 3, 2007 dismissing the objections. It held that a unique corporate stock arrangement prevented the sale of the Finch Pruyn stock and diversification of the trusts’ assets.
*664 After the trial, the Renz family moved, to have the attorney’s fees, in excess of $900,000, allocated to the objectants’ interests in the trusts, not to the principal of the trusts which would diminish the value of their shares. Despite significant misgivings and strongly expressed doubts as to the fairness of requiring the trusts to bear the entire costs of the litigation, this court was constrained to follow Matter of Dillon (28 NY2d 597 [1971]), thus denying the motion for allocation of fees. The Appellate Division affirmed (61 AD3d 1018 [2009]) but the Court of Appeals granted leave to appeal and modified (15 NY3d 179 [2010]). It overruled Matter of Dillon and remanded to this court to allocate the attorney’s fees and expenses in its discretion by applying several factors.
Issue Presented
How to allocate litigation costs to balance the competing interests of the beneficiaries of a trust by protecting nonobjecting beneficiaries from bearing the costs of litigation of a contested accounting matter they chose to not participate in, with the interests of the unsuccessful objecting beneficiaries who chose to litigate in good faith after being granted partial summary judgment.
The Trusts
The Hyde Article Seventh trust is a testamentary trust established under Article Seventh of the will of Charlotte E Hyde. This trust was established solely for the benefit of Louis Whitney and his children. The Renz family had no interest in this trust. Upon the death of the primary income beneficiary, Louis Whitney, the remainder was to go to his surviving children. As such, all expenses relative to the proceedings involving Article Seventh should be and have been borne by the Whitney children.
The Hyde Article Ninth trust is a testamentary trust established under Article Ninth of the will of Charlotte E Hyde. Upon the death of the primary income beneficiary, Mary VanNess Whitney, the principal of the Hyde Article Ninth trust was divided into two separate and equal trusts to provide income for her children, Mary Renz and Louis H. Whitney. Upon each of their deaths, the principal of their respective trusts were to be distributed to the surviving great-grandchildren of Charlotte E Hyde, or their issue surviving. Mary Renz has three children. Louis H. Whitney had two children. Thus, there are five great- *665 grandchildren, each of whom possesses a presumptive one-fifth remainder interest in both trusts. Neither Mary Renz nor Louis Whitney had a remainder interest in either of the trusts.
Objectant Louis Whitney died on January 16, 2008. Upon his death, the five surviving Renz and Whitney children received the principal of the Louis Whitney share of the Hyde Article Ninth trust in equal five shares, subject to this court’s prior order, dated October 12, 2007, granting a stay of enforcement.
The Cunningham trust is an inter vivos trust established in 1935 for the benefit of Nell Pruyn Cunningham’s husband, several friends and their descendants. Mary Renz and Louis WTiitney are income beneficiaries and presumptive remaindermen of an undivided one-sixth share each. Upon Louis Whitney’s death on January 16, 2008, his two children became the current income beneficiaries and presumptive remaindermen of that undivided one-sixth share of the Cunningham Trust (i.e., one twelfth each).
Objections
Louis Whitney and his children filed objections to the accounting for the two Hyde trusts. Significantly, only Louis Whitney filed objections to the Cunningham trust accounting.
During May of 2002, Mary Renz and her children filed objections to the intermediate accountings in Hyde but objected only to a portion of the attorney’s fees which they believed were unreasonable. In the Cunningham accounting they objected to the lack of diversification of the trusts.
However, following the completion of discovery in 2006, they decided not to litigate their objections. They filed an acknowledgment dated February 3, 2006 stating that they did not object to the accounts and acknowledged that “[t]hey are not entitled to share in any surcharges imposed against the Trustees in these proceedings.” They also filed a cross motion opposing the Whitneys’ objections and requesting that all legal fees be paid from the Whitneys’ share of the trusts. This was denied as being premature.
On January 3, 2007 this court dismissed the Whitneys’ objections and the Renzes renewed their motion to require that legal expenses be paid by the Whitneys. By order dated April 14, 2007, this court held that while it appeared to be fair to allocate the attorney’s fees to the Whitneys, it was constrained to follow the Court of Appeals holdings in Matter of Dillon. The court noted that the Dillon decision had been universally criticized by *666 the leading commentators of the EPTL and that the outcome was harsh and unfair. However, established precedent required that attorney’s fees be paid from the principal of the trusts to the detriment of the nonobjecting beneficiaries, such as the Renz children.
Court of Appeals
After the Appellate Division affirmed this court’s decision, the Court of Appeals granted leave to appeal and modified. It overruled its decision in Matter of Dillon (supra) and restored discretion to the Surrogate when deciding issues of fee and expense allocation. It specifically held that SCPA 2110 (2) gives the trial court discretion to allocate the payment of a fiduciary’s attorney’s fees either from the estate as a whole or from shares of individual estate beneficiaries, and that Surrogate’s Court had discretion to charge individual trust beneficiaries’ shares of trusts for counsel fees incurred by trustees in defense of beneficiaries’ objection to an accounting. (Matter of Hyde, 15 NY3d 179, 185-186 [2010].)
Pro Tanto Rule Compared to the Rule in Hyde
The pro tanto rule is an equitable rule from the common law intended to protect fiduciaries by limiting their liability for negligent (but not egregious) conduct. Simply stated, a beneficiary who does not object to a fiduciary’s conduct cannot share in the benefits obtained if an objecting party is successful. It is based on the concept that those who do not object to an account are deemed to have accepted it, and promotes the public policy of encouraging parties to take on the necessary and sometimes onerous duties of a fiduciary. Beneficiaries cannot await the outcome of an attack on a fiduciary by other parties, then share in the surcharge without taking any of the risks or doing any of the work. (See Valente and Bockstein, Pro Tanto Rule: Sword or Shield, NYLJ, July 2, 2010, at 3, col 1.)
The Court of Appeals was presented with the inverse situation in Hyde. It held that a beneficiary who objects but is not successful can be held responsible, in whole or in part, for the litigation expenses incurred (see Matter of Bishop, 277 App Div 108 [1st Dept 1950]). The pro tanto rule protects fiduciaries by limiting their liability whereas the Hyde/Bishop rule discourages frivolous litigation. The pro tanto rule applies to the receipt of benefits resulting from successful objections. The Hyde/Bishop rule applies to the payment of costs resulting from unsuccessful objections.
*667 Multi-Factored Assessment
The Court of Appeals also held that
“[i]n cases where a fiduciary is to be granted counsel fees under SCPA 2110 (2), the Surrogate’s Court should undertake a multi-factored assessment of the sources from which the fees are to be paid. These factors, none of which should be determinative, may include: (1) whether the objecting beneficiary acted solely in his or her own interest or in the common interest of the estate; (2) the possible benefits to individual beneficiaries from the outcome of the underlying proceeding; (3) the extent of an individual beneficiary’s participation in the proceeding; (4) the good or bad faith of the objecting beneficiary; (5) whether there was justifiable doubt regarding the fiduciary’s conduct; (6) the portions of interest in the estate held by the non-objecting beneficiaries relative to the objecting beneficiaries, and (7) the future interests that could be affected by reallocation of fees to individual beneficiaries instead of to the corpus of the estate generally.” (Matter of Hyde, 15 NY3d at 186-187.)
Applying the Factors
Hyde Article Ninth Trust
Factor 1: Whether the Objecting Beneficiary Acted Solely in His or Her Own Interest or In the Common Interest of the Estate
The Whitneys objected that the trust portfolios were not diversified as required by the Prudent Investor Act. At no time during this lengthy litigation did any party suggest that diversification was not in the best interests of the trusts. Partial summary judgment was granted to the Whitneys by decision and order dated September 8, 2005, which found that the trusts were not diversified as required and that the terms of the governing trust instruments did not prohibit diversification.
According to affidavits in related matters filed in this court and as announced by Finch Pruyn & Company and widely reported by the media, the Finch Pruyn shareholders voted to approve the sale of the company to Finch Pruyn Holdings, LLC on April 24, 2007. The sale occurred in June of that year. The court takes judicial notice of documents subsequently filed in court that the portfolios of the trusts have now been liquidated and diversified. Although the Renzes chose to withdraw their *668 objections and waived any claim for surcharges resulting from the Whitney objections, the Renzes nevertheless benefitted from that liquidation. While this diversification may have occurred had the Whitneys not filed objections, this development cannot be ignored as the trustees managed the trusts without diversifying the assets for decades.
Factor 2: The Possible Benefits to Individual Beneficiaries from the Outcome of the Underlying Proceeding
The Renz respondents filed an acknowledgment on February 3, 2006, prior to the trial, that they did not join in the litigation and understood that they could not benefit in the event that surcharges were awarded. Consequently they contend that they stood to gain nothing from the objections. However, as noted above, the trustees failed to comply with the Prudent Investor Act for decades (for unique and valid reasons), but achieved diversification shortly after this matter was decided.
Factor 3: The Extent of an Individual Beneficiary’s Participation in the Proceeding
Following discovery, the Renzes withdrew their objections and did not participate in the trial. The Whitney children filed objections in the Hyde accountings and participated in the joint trial. Significantly only Louis H. Whitney filed objections in the Cunningham accounting.
Factor 4: The Good or Bad Faith of the Objecting Beneficiary
The court is all too familiar with disgruntled, vexatious estate litigants who are more (often exclusively) concerned with emotional rather than legal issues. Frequently they act without, or contrary to, the advice of counsel, often pro se. In contrast, the Whitneys consulted experienced counsel, who performed extensive investigation into the facts, the voluminous documents and records, the applicable law, and had a good faith belief in the necessity and validity of their proposed litigation.
Prior to filing their objections they correctly determined that failure to object to the intermediate accountings would prevent them from raising those objections in the future. They met with Buffalo Law School Professor Kenneth Joyce, one of the authors of the Prudent Investor Act, who confirmed that the Whitneys appeared to have a valid basis for objecting to the accountings. They also consulted with Lawrence Griswold, a retired senior trust officer at Lincoln Chase Bank in Rochester, who opined that the trustees were legally responsible for their failure to diversify the portfolios. Both experts offered to, and did, testify *669 as witnesses on behalf of the objectants. Finally, this court granted partial summary judgment decision to the Whitneys and denied summary judgment to the trustees finding that there were no questions of fact that several elements of the Prudent Investor Act had been violated.
Where an account discloses possible mismanagement or a substantial loss, it “in and of itself, does not imply negligence, imprudence or mismanágement on the part of the trustees, it does seem to imply a duty of explanation [by the trustees] to the beneficiaries and remaindermen” (Matter of Penney, 60 Misc 2d 334, 336 [1969]). The Whitneys filed their objections in good faith, and they justifiably relied on the advice of numerous respected experts and experienced legal counsel.
Factor 5: Whether There was Justifiable Doubt Regarding the Fiduciary’s Conduct
Unlike many objectants who base their claims on surmise, supposition or suspicion, the Whitneys had a plethora of proof of the trustees’ failure to diversify. Experienced counsel and several knowledgeable experts advised the objectants of the merits of the case. This court’s summary judgment decision established that their objections were justified and not a vehicle to retaliate against the trustees or family members.
Factor 6: The Portions of Interests in the Estate Held by the Nonobjecting Beneficiaries Relative to the Objecting Beneficiaries
This court is well aware of litigation by beneficiaries of an inconsequential share in a trust or estate who appear to be, and often state, that they are motivated more by a desire to swamp the main beneficiaries in litigation costs rather than in succeeding. That is not a factor in the present matter. While the Renz children own a collective three-fifths (60%) remainder interest in the principal of the Hyde Article Ninth trust, the Whitneys own the remaining presumptive two fifths (40%). The trust is worth several million dollars. The damages for failing to diversify could have exceeded several million dollars. Therefore, the Whitneys had a significant economic interest on the litigation.
Factor 7: The Future Interests That Could be Affected by Reallocation of Fees to Individual Beneficiaries Instead of to the Corpus of the Estate Generally
The,Renz children own a collective three-fifths (60%) remainder interest in the principal of the Hyde Article Ninth trust. Therefore, if the litigation fees are paid from the trust *670 corpus and not reallocated to the Whitney share, the Renz beneficiaries who did not object and did not participate in the trial will bear a larger portion of the expenses than the actual object-ants.
Hyde Article Seventh Trust
The Hyde Article Seventh trust was established solely for the benefit of Louis Whitney and his children. The Renz family had no interest in said trust. As such, all litigation expenses involving Article Seventh should be and have been paid from the Whitney grandchildren’s interest.
Cunningham Trust
Unlike the two Hyde trusts, neither of the Whitney children filed objections to the Cunningham accountings. Their father, Louis Whitney, was the only objectant. In fact, the Whitney children were not added as parties to that proceeding until after their father died, and the trial had concluded. Consequently the Cunningham trust presents an issue separate and distinct from the Hyde Article Ninth trust: Whether nonobjecting remainder-men should be responsible for litigation expenses incurred as the result of unsuccessful objections filed by their father.
Although this court previously held in its prior decision and order, dated April 29, 2008, that the Whitney children should be substituted in for their father as respondents, this was not because the Whitney children desired to litigate the Cunningham appeal on their own behalf, but because the court required a new party to finalize the litigation on behalf of their father. This does not, however, negate the fact that they never objected to the Cunningham accounting.
Since the Whitney children never objected to the intermediate accounting, they should not be penalized. They had no economic interest in the outcome. The pro tanto rule prohibits them from receiving any benefit. Any surcharge gained would have to be held in an earmarked fund specifically for the benefit of the life income beneficiary, their father (see Matter of Hall, 164 NY 196 [1900]).
Litigation expenses resulting from an unsuccessful action against a trust should be paid, not by remaindermen who had no part in instituting the action and no interest in the outcome, but by an income beneficiary who instituted the action solely for his own benefit (Matter of Ungrich, 201 NY 415 [1911]). In Ungrich, the remaindermen were charities and the objectants *671 commenced litigation termed “unwarranted” by the court (id. at 419), thus perhaps making a more compelling case. However, in balancing the equities, the Whitney remaindermen should not be treated differently than the other remaindermen, including the Renz children, who did not object to the accounting.
In Matter of Bishop (supra) the Appellate Division held that where an income beneficiary instituted an unsuccessful action, the trust, not the remaindermen, should be responsible to pay litigation costs. The court found that the action was reckless and lacking merit, contrary to the facts here. However, where an account reflects mismanagement or a substantial loss to the estate or trust, it implies a duty of explanation by the trustees to the beneficiaries and remaindermen (see Matter of Penney, supra).
Where such as here a “court cannot say that [issues raised in litigation] were so lacking in substance as to constitute proof of . . . malice on the part of the income beneficiaries . . . [the court] will follow the usual practice and will charge the attorneys’ fees wholly to principal” (In re Bishop’s Estate, 79 NYS2d 220 [1948] [emphasis added]).
The remaindermen should not have to pay for the action of their father, especially since he acted in good faith. The Court of Appeals decision in this matter reiterates that parties who do not object to an accounting should not be required to bear the costs of the litigation. While the practical effect of having the litigation expenses paid from the corpus of the trust will result in the nonobjecting Renz family bearing some of the costs of the litigation, the Renz remaindermen hold only a one-twelfth interest. Therefore their liability will be de minimis.
Additional Factors
The list of factors set forth by the Court of Appeals in Matter of Hyde is not exhaustive. Rather, the decision states “[t]hese factors, none of which should be determinative, may include” the seven factors set forth above (see Matter of Hyde, 15 NY3d at 186 [emphasis added]). There are additional factors unique to these proceedings that must be considered.
First, the Renz beneficiaries filed objections to the Hyde accounting dated May 16, 2002 and to the Cunningham accounting dated June 4, 2003. In Hyde, the objectants complained of a specific, relatively small payment of attorney’s fees. In the Cunningham accounting the objections were broader; they objected to the lack of diversification of the trust assets. Thereafter they *672 engaged in discovery from 2003 until 2006, then withdrew their objections to both accounts by filing the acknowledgment dated February 3, 2006. They did not participate in the trial. Therefore, a small portion of the attorney’s fees charged in this matter were incurred as a result of the Renzes’ participation in the discovery process. It is likely that some of the discovery occurred simultaneously with discovery conducted by the Whitneys.
Second, Louis Whitney, who died January 16, 2008, filed objections to the Cunningham account. However, his children did not. The Hyde and the Cunningham objections were tried jointly. This created some unique issues. The Whitney children were present and participated in the trial regarding the Hyde objections. Although they lacked standing to participate in Cunningham, they were present while issues regarding the Cunningham trust were heard. Although they should not be responsible to pay litigation expenses involved in the Cunningham trust, it is impossible to determine precisely what litigation expenses pertained to which trust. For instance, when the attorneys for the Hyde trust presented testimony that the trust could not diversify the trust assets due to the unique structure of its corporate stock, that testimony also established the validity of the Cunningham trust’s account. When the Hyde trust lawyers cross-examined the objectant’s experts, the points raised also benefitted the Cunningham trust. There is no exact method of dividing the litigation expenses by number of questions asked, time spent, or whether any particular witness or question benefitted the Hyde trust, the Cunningham trust, both or neither.
In preparing for trial, the parties agreed to share the expert witness fees equally. Although respondent Renz subsequently asked the court to overrule that agreement and allocate the payment of said expert witness fees based on the number of shares that each respective trust controls, this court denied said request. By decision and order dated August 16, 2007, this court directed that the expert witness fees be shared equally as originally agreed upon.
Consequently, the only practical method of allocating the Cunningham trust’s litigation expenses is to order that they be paid from the trust principal, even though it is apparent that at least some of those expenses were incurred because objections were filed in the Hyde trust, and that some of the Whitney objectants were present in the courtroom while issues involving the Cunningham trust were litigated. As a result, the Renz family’s *673 share will be reduced despite the fact that they, like the Whitney children, did not object or participate in the litigation.
Finally, the size of the litigation expenses, in excess of $1,000,000 must be considered in light of the substantial assets being held in trust. Each trust is believed to be currently worth approximately $2,500,000.
Following the trial, on July 14, 2008, this court awarded attorney’s fees in the amount of $966,087.90 and disbursements of $54,819.06, to the law firm of Putney, Twombly, Hall & Hirson LLP It directed that those expenses be shared equally by the parties and that they be paid from the principal of the Hyde Article Ninth trust for the benefit of Mary W. Renz and Louis H. Whitney. The court also awarded attorney’s fees in the amount of $104,549.90, and disbursements of $4,028.02 to the law firm of Bartlett, Pontiff, Stewart & Rhodes. It ordered that those expenses be shared equally by the parties and paid from the principal of the Hyde Article Ninth trust.
Based on the foregoing, it is hereby ordered that all litigation expenses incurred by the trustees of the Hyde Article Seventh trust, which was established exclusively for the benefit of the Whitneys, be paid from principal from the corpus of the trust, as directed in this court’s July 14, 2008 decision and order, and it is further ordered that all litigation expenses incurred by the Hyde Article Ninth accountings before February 3, 2006 shall be paid from the corpus of the trust. All litigation expenses incurred by the Hyde Article Ninth accountings after February 3, 2006 shall be paid as follows: (1) one half shall be paid from the shares of the objectants, Louis H. Whitney, Charlotte Whitney and Louis Whitney, II, and (2) the remaining one half of said expenses shall be paid from the trust corpus, and it is further ordered that the trustees of the Hyde Article Ninth trust reallocate the litigation expenses that were previously paid from the Article Ninth trust so as to comply with this decision and order. Ordered that the Renz counterclaim is granted to the extent that one half of all future litigation expenses incurred by the Hyde Article Ninth trustees in defending this accounting proceeding be paid from the Whitney share, one half from trust corpus and it is further ordered that all litigation expenses of the Cunningham accounting shall be paid from the principal of the trust without reallocation.