OPINION OF THE COURT
John M. Czygier, Jr., S.
In this contested accounting proceeding, the Attorney General and the American Latvian Association (sometimes referred herein as the Charity), the residuary beneficiary, have moved for partial summary judgment, seeking to sustain several objections to the account of the fiduciary as a matter of law. Both the executor and decedent’s spouse oppose the relief requested by the moving parties and have cross-moved for summary relief on other issues. For the reasons set forth below, the motions are denied and the cross motions are granted, in part.
*484 Background
Decedent died testate on October 26, 2007. His will dated December 11, 2001 was duly admitted to probate on May 15, 2008 and letters testamentary issued thereupon to petitioner herein. Decedent made several bequests under his will to friends, with the residue of his estate left to charity, namely the American Latvian Association, and no provision for his spouse, Martha Gonzalez Bonora. A proceeding to determine the validity of a right of election was litigated by and between the parties herein, which resulted in a settlement filed with the court in April of 2010. Pursuant to that agreement, the parties withdrew their objections to the validity of Bonora’s right to an elective share of this estate, reserving resolution of potential tax apportionment issues to the accounting, which is now pending. The objections filed to the account that are the subject of these motions principally concern the spouse’s entitlement to the benefits of the tax apportionment clause in decedent’s will notwithstanding her having elected to take against said will.
Applicable Law
Summary judgment is designed to eliminate from the trial calendar litigation that can be resolved as a matter of law (see Andre v Pomeroy, 35 NY2d 361 [1974]). The court’s burden is not to resolve issues of fact, but merely to determine if such issues exist (see Dyckman v Barrett, 187 AD2d 553 [1992]). It is a drastic remedy that will only be awarded where there is no triable issue of fact (see Barclay v Denckla, 182 AD2d 658 [1992]). The court, therefore, must construe the facts in a light most favorable to the non-moving party so as not to deprive that person of her/his day in court (see Russell v A. Barton Hepburn Hosp., 154 AD2d 796 [1989]).
The party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (see Zarr v Riccio, 180 AD2d 734 [1992]). Failure to make out a prima facie case requires a denial of the motion regardless of the sufficiency of opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]). If, however, this burden is satisfied, the burden of going forward shifts to the opposing party to establish the existence of material issues of fact requiring a trial (see Romano v St. Vincent’s Med. Ctr. of Richmond, 178 AD2d 467 [1991]), by the tender of evidentiary proof in admissible form (see Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979]).
*485 Discussion
a. Tax Allocation: Right of Election
The executor filed the underlying account of his stewardship in which it appears that all estate taxes were apportioned against the residuary estate. The American Latvian Association and Attorney General have objected to this apportionment, as well as other aspects of petitioner’s account, asserting that once Bonora exercised her right of election, she forfeited all benefits afforded her under decedent’s will, including any related to the allocation of estate taxes.
The executor and Bonora claim that the allocation was appropriate, as decedent chose to supercede the default tax apportionment statute (EPTL 2-1.8) by providing an alternative tax apportionment scheme in his will.
It should be noted that this is a significant issue, in part, because Bonora is not a citizen of the United States and therefore cannot take advantage of the unlimited marital deduction ordinarily afforded a spouse (26 USC § 2056).
The relevant provision of EPTL 5-1.1-A provides as follows:
“(2) The elective share, as used in this paragraph, is the pecuniary amount equal to the greater of (i) fifty thousand dollars or, if the capital value of the net estate is less than fifty thousand dollars, such capital value, or (ii) one third of the net estate. In computing the net estate, debts, administration expenses and reasonable funeral expenses shall be deducted, but all estate taxes shall be disregarded, except that nothing contained herein relieves the surviving spouse from contributing to all such taxes the amounts apportioned against him or her under 2-1.8” (EPTL 5-1.1-A [a] [2]).
In pertinent part, the statute also provides at EPTL 5-1.1-A (a) (4) (A) that
“[ujnless the decedent has provided otherwise, if a spouse elects under this section, such election shall have the same effect with respect to any interest which passes or would have passed to the spouse, other than absolutely, as though the spouse died on the same date but immediately before the death of the decedent.”
Further, at subdivision (c): “General provisions governing right of election.”
“(1) Where an election has been made under this *486 section, the will or other instrument making a testamentary provision, as the case may be, is valid as to the residue after the share to which the surviving spouse is entitled has been deducted, and the terms of such will or instrument remain otherwise effective so far as possible, subject, however, to the provisions of clause (a)(4)(A).”
With respect to estate taxes, generally, the governing tax apportionment statute provides that unless the testator has provided otherwise, estate taxes are charged against the beneficiaries of the estate in proportion to the benefits they receive (EPTL 2-1.8 [c] [1]).
The first rule in statutory construction requires that the court look to the statutory text as the best evidence of the legislature’s intent (see Matter of Excellus Health Plan v Serio, 2 NY3d 166 [2004] ). “As a general rule, unambiguous language of a statute is alone determinative” (see Riley v County of Broome, 95 NY2d 455, 463 [2000] [citation omitted]). Based upon such review, the right of election does not provide that every benefit or advantage afforded a spouse be forfeited as a result of the exercise of one’s right to an elective share. This is also consistent with the general rule that statutory provisions concerning spousal rights are to be liberally construed (see Matter of Colin, 23 AD3d 824 [2005] ).
Importantly, and at the heart of the issues presented by the pending applications, decedent’s will provides that all just debts and all estate, inheritance, transfer, succession, legacy, gift and similar taxes, including penalties and interest, whether the property passes by will or otherwise, be paid out of the residuary estate, without contribution from any recipient.
EPTL 5-1.1-A addresses specifically the forfeiture of an “interest” which passes or would have passed to the spouse and the application of EPTL 2-1.8, the tax apportionment statute, where such right is exercised. As set forth above, EPTL 5-1.1-A (a) (2) provides in relevant part that “nothing contained herein relieves the surviving spouse from contributing to all such taxes the amounts apportioned against him or her under 2-1.8” (emphasis added). Thus, nothing contained in the statute would obligate a spouse to pay taxes not otherwise apportioned against her, especially, where as here, her spouse has specifically and intentionally opted out of the default tax apportionment statute.
Although the arguments of the American Latvian Association and the Attorney General speak to the forfeiture of benefits *487 that Bonora derives under the terms of decedent’s will, it is clear from a plain reading of decedent’s will that the tax burden, if any, was to be borne by the recipient of the residue of his estate, in this case the Charity.
Decedent’s tax apportionment provision (article second) provides, in pertinent part, that
“all estate, inheritance, transfer, succession, legacy, gift and similar taxes (including, without limitation, all taxes of a personal nature assessed, levied, or imposed upon any recipient or property) including interest and penalties thereon imposed by any government in respect to any property required to be included in my gross estate for estate tax or like purposes by any government, whether the property passes under this Will or otherwise, without contribution by any recipient of any such property, be paid out of my residuary estate.”
Whether, in hindsight, the decision to forgo the statutory allocation was beneficial to one or more parties is of little import. Although the parties cite numerous cases in support of their respective positions, none of the cases cited are completely on point and all are distinguishable for a variety of reasons, including the potential tax implications where a noncitizen spouse is involved or due to changes in the tax or right of election statutes. Clearly, the relevant statutes, EPTL 2-1.8 and 5-1.1-A, provide, unambiguously, that a testator can direct how taxes are allocated among his beneficiaries, including where, as here, an elective share may be exercised.
Significantly, decedent named Bonora beneficiary of two IRAs amounting to more than $1.1 million. There is no question, and it is conceded by all, that based upon the tax apportionment provision in his will, in the absence of the election, any tax burden associated with same would be borne by the residuary. Further, the will’s apportionment clause excepted all preresiduary bequests, the beneficiaries of which are friends, from contribution to the tax burden. Thus, it is clear that pursuant to decedent’s estate plan all noncharitable bequests were to pass to the intended beneficiary free of any estate tax liability.
Based upon the foregoing, the court finds that the tax apportionment clause found at article second of decedent’s will governs the allocation of taxes thereby superceding the default provision of EPTL 2-1.8. Accordingly, the objections filed by the Charity and Attorney General challenging the propriety of al *488 locating estate taxes solely against the residuary estate are dismissed.
b. Right of Election Contribution
With respect to calculation of the elective share, the Charity asserts that estate taxes should have been deducted from the residuary estate prior to determining the proportional shares of the contributing parties. The fiduciary and one of the beneficiaries contributing to the payment of the elective share assert that the calculation set forth in the account is accurate.
Attached to the account at “Schedule J” are calculations concerning the right of election. The attachment shows the gross estate based upon the date of death value of assets, expenses, the value of the elective share, testamentary substitutes, net elective share, and the ratable contribution of each beneficiary. Based upon those calculations, Bonora’s elective share is $2,885,717. The Charity’s contribution is $1,263,800, which it contends is miscalculated.
EPTL 5-1.1-A (a) (2) provides unambiguously that the “net estate” for purposes of calculating contribution is the total capital value of the testamentary dispositions, testamentary substitutes, and intestate property minus debts, administration expenses and reasonable funeral expenses.
If EPTL 2-1.8 was applicable or the decedent did not provide that all taxes be borne by the residuary estate, the Charity’s argument might be more compelling. However, based upon the tax allocation provision in decedent’s will, in arriving at the “net estate,” no deduction in the value of the estate is made for estate taxes that may be owing on any of the bequeathed property because, for purposes of calculating the elective share in this case, who is ultimately responsible for estate taxes is irrelevant. To calculate the contribution otherwise would effectively artificially inflate the value of the non-tax-contributing shares. Accordingly, the Charity’s objection to such calculation is dismissed.
c. Right of Election: Unpaid Interest
With respect to Bonora’s cross motion, in addition to seeking denial of the relief requested by the Charity and Attorney General, she asks that interest be awarded on the unpaid balance of her elective share and that the Charity be burdened with such expense. It should be noted that there was an issue concerning the propriety of the reply papers filed by Bonora on this issue, as the Charity and Attorney General argued that same consti *489 tuted an improper surreply because Bonora addressed issues beyond that of the propriety of an award of interest. The court has reviewed her submission and accepted same for filing. Thus the court has filed the papers denominated “Revised Reply Affirmation in Support of the Cross Motion on Interest.”
Although the application of EPTL 11-1.5 to an elective share does not appear to be an issue, the propriety of same and the allocation among the various beneficiaries is addressed only in part by the pleadings (see Matter of Kasenetz, 196 Misc 2d 318 [2003]).
As for Bonora’s request that the assessment of unpaid interest be borne by the Charity, same is denied. The parties agreed in their settlement in April of 2010 that “all issues relating to the amount and party responsible for paying” estate taxes shall be determined in the accounting proceeding or other appropriate proceeding. Regardless of the sufficiency of papers filed in opposition to such claim, upon this record, there is no basis in law or fact to “penalize” the Charity for seeking in good faith to protect its interest in this estate. Although counsel seeks to extend Matter of Hyde (15 NY3d 179 [2010]), to encompass assessing other costs, in this case the unpaid interest, against a party, the court is not inclined to do so, particularly in light of the unique circumstances presented herein. Moreover, the issue of surcharging the Charity with the cost of unpaid interest is improperly raised for the first time in Bonora’s cross motion. Accordingly, that portion of Bonora’s motion is denied.
Conclusion
Accordingly, it is ordered, that the motions by the American Latvian Association and Attorney General are denied; and it is further ordered, that the cross motions are granted solely to the extent consistent herewith.