410 A.2d 1224

In re TRUST ESTATE of Abraham PLEET, Settlor.

Appeal of Betty Ann COHEN, Jill Weisberg and Lawrence Pleet, Individually and as natural guardians of their respective minor issue, and Hillirie Pleet, Rory Cohen, Lon Cohen and Ami Wesiberg, exceptants to the adjudication of the within Trust Estate.

Supreme Court of Pennsylvania.

Argued Oct. 10, 1979.

Decided Feb. 1, 1980.

George H. Nofer, James D. Crawford, Philadelphia, for appellants.

Linda A. Fisher, Philadelphia, for appellees.

Israel Packel, Philadelphia, for appellee, Judith Wilson.

Edward N. Polisher, David R. Schwartz, Philadelphia, for Fidelity Bank.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from a decree of the Orphans' Court Division of the Court of Common Pleas of Philadelphia

County. A majority of the court en banc dismissed exceptions to the adjudication of the auditing judge and affirmed the adjudication absolutely. This direct appeal followed.[1] For the reasons stated herein, we find appellant's contentions to be without merit and therefore affirm.

By deed dated April 17, 1934, Abraham Pleet established a life insurance trust in which he created, inter alia, a life income interest in his wife and subsequent life income interests in his two sons, Herbert Pleet and Gilbert Pleet. At issue here is the proper scheme for distribution of principal at the death of each of settlor's sons.

Abraham Pleet (settlor) died August 1, 1937. Lena Pleet (settlor's wife) died August 21, 1956, leaving settlor's two sons as beneficiaries of the trust income. The present account was filed for audit by reason of the death of Herbert Pleet on May 2, 1975. Herbert Pleet is survived by three children and seven grandchildren. Gilbert Pleet, who is still living, has one child and three grandchildren.[2]

1. Jurisdiction is vested in the Court by virtue of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(3), 17 P.S. § 211.202(3), (current version at 42 Pa.C.S.A. § 722(3)).

2. See note 2 on page 1226.

FAMILY TREE

ABRAHAM FLEET
Date of Trust 4/17/34

APPELLEES:

APPELLANTS:

Herbert Fleet
b. 1/11/1900
d. 5/2/1975

Gilbert Fleet
b. 8/22/04

JUDITH WILSON
b. 3/10/31

BETTY ANN COHEN
b. 1/16/20

JILL WEISBERG
b. 2/26/33

Rory Cohen
b. 7/19/55

Lon Cohen
b. 11/6/56

Ami Weisberg
b. 2/2/56

Daniel Weisberg
b. 7/14/59

Julie Weisberg
b. 9/24/70

Valentine Wilson, Jr.
b. 6/11/52

Andrew Wilson
b. 2/8/56

Victoria Wilson
b. 11/22/60

LAURENCE FLEET
b. 11/10/30

Stephanie Fleet
b. 10/20/59

Hillarie Fleet
b. 6/15/56

The provision of the trust indenture giving rise to dispute is Item SECOND (d), which provides, in pertinent part:

Upon the death of the survivor of Settlor and his said wife to pay the said net income equally unto Settlor's sons, Herbert Pleet and Gilbert Pleet, for and during the terms of their respective lives. Upon the death of each of the said sons of Settlor, whether such death shall occur before or after the death of the survivor of Settlor and his said wife, to transfer, assign and pay over at any time fixed for the distribution thereof, the principal of the trust represented by the son of Settlor so dying, or which would have been represented by such son had he been living at the time fixed for the said distribution, *unto such of the children and issue of deceased children of Settlor's sons, Herbert Pleet and Gilbert Pleet, as may be living at the time fixed for the said distribution equally, per stirpes, absolutely*, and in default of such issue then living of settlor's said sons to transfer, assign and pay over the said share of principal unto the survivor of Settlor's said sons absolutely. (Emphasis added).

The dispute at audit and before us now is the correct interpretation of the above quoted (italicized) language and the manner in which the principal now distributable shall be awarded. The issue, succinctly stated, is: precisely which persons comprise the class of takers to receive the distribution of Herbert Pleet's share of principal?

Three possible methods of distribution have been suggested:

(1) equally to all four children of both sons (appellants' position);

(2) one-sixth to each of Herbert Pleet's children and the remaining one-half to the child of Gilbert Pleet (the original position of Gilbert's child); or

(3) all to the three children of Herbert Pleet only, with the result that Gilbert's child will receive the remaining half of principal upon Gilbert's death (appellees' position).[3]

The auditing judge, in a comprehensive and well reasoned opinion, concluded that distribution should be made according to method (3) Herbert Pleet's three children have appealed from dismissal of their exceptions to the auditing judge's determination and contend that method (1) is the appropriate manner of distribution. Appellants also challenge the determination of the auditing judge as affirmed by the court en banc that the fee of the guardian and trustee ad litem be charged against the entire trust corpus.[4]

Our examination and study of the trust instrument satisfies us that the auditing judge and the court en banc correctly construed settlor's language. We are in full agreement with the adjudication, and we affirm the decree below on the following excerpts from the opinion of the auditing judge:

3. Gilbert's child, Judith Wilson, is an appellee in this matter and now espouses interpretation (2), the scheme of distribution most profitable to her and her children.

4. The court, pursuant to petition, appointed L. A. Fisher, Esq., guardian and trustee ad litem to represent the interests of Gilbert's minor grandchild and any possible unborn issue of Gilbert's daughter.
   Appellants state in their brief that they "do not attack the decision to charge a portion of the guardian's compensation to the portion of the share being distributed to appellants since [they] believe that the entire distribution decreed by the majority of the court en banc should be overturned, in which case the allocation of the guardian's compensation to both portions of the trust corpus would be proper." (Brief for appellants at 6.) We take this to mean that appellants would nevertheless maintain their dissatisfaction with the allocation of costs as approved by the court below and press this point on appeal in the event we affirmed the scheme of distribution ordered by the lower court. Thus, we do give consideration to the question of costs.

"No one disputes that the deed, by its terms calls for a 'per stirpes' distribution. There is disagreement, however, as to whether the children or the grandchildren of Abraham Pleet are the heads of the stirpes. If settlor's grandchildren are the heads, then upon the death of each son, principal is to be distributed per capita to all the grandchildren [position 1 above] . . . If, however, it is determined that the sons are the heads, then each son's issue is to receive one-half of the trust corpus. A disagreement arises under this latter interpretation as to the timing of the distribution: is only the deceased son's issue entitled to the principal distributable upon his death [position 3], or are the issue of both sons entitled to one-half of the principal distributable at the death of each son [position 2]?

"In determining which scheme of distribution is appropriate, the controlling factor is the intent of the author of the instrument. That intent must

'be ascertained from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (e) canons of construction will be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain. [Citations omitted]'

*Pearson Estate,* 442 Pa. 172, 180 [275 A.2d 336] (1971). It is to be noted that the rules for determining intent are the same for trusts as for wills. *Pew Trust,* 441 [411] Pa. 96, 107 [191 A.2d 399] (1963).*

" . . . After considering the guidelines set forth above, the Court is convinced that it was settlor's intent that each son's issue receive one-half the principal of the trust, and that at the death of each son, only that son's issue should share in the principal distribution.

---

* We note that *Pew Trusts,* as cited by the adjudicating judge has been overruled on other grounds by *Estate of Tyler,* 474 Pa. 148, 153, 377 A.2d 157 (1977). *Tyler* has no effect whatsoever on the above stated principle.

"An examination of the instrument reveals that settlor was primarily concerned with the interests of his two sons when he established the trust. The instrument is phrased in terms of his sons, and the scheme of distribution and control rests not on his grandchildren, but on his children.[1] The

"[1] Footnote omitted.

sons are identified by name. They share equally in the income of the trust. When a son dies, only his share of the principal is paid out; the other half remains in trust until the surviving son's death. Settlor specifically provides that after his death both sons are to be trustees along with The Fidelity Bank. Yet upon the death of a son, the remaining trustees may name anyone they wish as successor. No preference is ever expressed that a grandchild be named co-trustee, or even that the grandchildren be consulted about the selection.

"While these features are suggestive, the Court is persuaded by an examination of the entire instrument, and most particularly by the provisions of Item FOURTH, that settlor's primary intent was to benefit his sons and to benefit their issue only *through* them.

"The third paragraph of Item FOURTH provides,

"[d]uring such time as Settlor's sons, Herbert Pleet and Gilbert Pleet shall *both* be living Trustee shall at any time and from time to time, upon receipt of written directions signed by *both* of them, borrow such amount or amounts as Settlor's said sons may agree upon on such insurance policy or policies held hereunder as Settlor's said sons shall agree upon, the amount or amounts so received by Trustee to be paid over *equally* and *absolutely* to Settlor's said sons." (Emphasis added).

"By virtue of this provision, settlor, in effect, gives his sons a power of appointment over trust principal during settlor's life.[2] The corporate trustee (The Fidelity Bank) is

"[2] This power of appointment terminated at settlor's death since only during his lifetime would there be policies in effect against which loans could be made.

to obtain loans upon the sons' direction; the proceeds are then to be paid over to the sons *absolutely*. There is no duty

on them to repay any such funds received. They could literally destroy the trust and deprive their issue of any interest whatsoever.[3] The terms of the power are restricted,

"[3] The policies would terminate, and the trust would thereby be destroyed, if the loans against them at any time, plus the interest, equalled their value.

however, in that both sons must agree to any appointments, and they must receive *equal* shares of such principal. Because of this equal allocation requirement, any possible benefit the grandchildren might receive from the appointed funds would be through their fathers, and thus equal by family, not equal among the grandchildren themselves. There is, of course, no requirement that settlor's grandchildren be benefited by the withdrawals; but the interest of a grandchild cannot be destroyed without his own father's requesting the withdrawal and receiving his share of it.

"The final paragraph of Item FOURTH makes it clear settlor intended that any interest of a grandchild would be fully satisfied and terminate upon the distribution of one-half the trust corpus following the death of his or her father. Settlor directed

"[a]fter the death of either of Settlor's said sons, Trustee shall at any time and from time to time, upon receipt of written directions signed by the *survivor* of Settlor's said sons, borrow such amount or amounts as such insurance policy or policies held hereunder as the *survivor* of Settlor's said sons shall indicate, the amount or amounts so received by Trustee to be paid over to the *survivor* of Settlor's said sons absolutely." (Emphasis added).

"This paragraph provides that after the death of the first son, the trustee is to obtain loans upon the direction of, and pay over the full proceeds to, only the surviving son. Thus the surviving son, acting alone, has the power to destroy the trust by appointing to himself principal from which he alone will derive benefit. It is inconceivable that if settlor intended that the children of a deceased son should retain an interest in the principal continuing in trust, he would not have provided some mechanism for the protection of that interest. Yet he required neither that they (or someone

acting on their behalf, if minors) join in directing the withdrawals, nor that they receive shares of the proceeds. Indeed, since there is no protection whatsoever, any 'continuing interest' of the deceased son's children would be illusory. The surviving son could withdraw the entire trust corpus, perhaps merely to favor his own children by distributing it to them, and thereby preclude his deceased brother's children from any participation in the distribution of 'their share.' Such a scheme would be extremely one-sided, favoring the surviving son, and completely arbitrary, since either son could attain this preferred status merely by surviving his brother. It would be completely incongruous with settlor's equitable provision for both his sons and the equal affection he had for them, evident in his will as well as in this deed of trust.[4] We believe it obvious he intended that

"[4] While we do not have to rely on settlor's will or any other documents in the instant case, we note that, where necessary, it is proper to do so. *Soles Estate,* 451 Pa. 568 [304 A.2d 97] (1973).

at the death of each son, that son's issue alone should share in the distribution, and that their interests in the trust should then terminate.

"This conclusion is further supported by Item NINTH of the instrument:

"Trustee is hereby authorized to pay at any time, and from time to time, any portion or portions of the principal of the funds held In Trust hereunder unto or for the account of any beneficiary, or any descendent of Settlor, either for comfortable maintenance and support for educational requirements, illness, operations, or for any reason whatsoever which shall to Trustee, in its discretion, seem sufficient. Any payments so made shall as far as is practicable in the discretion of Trustees, be charged against the share of principal represented by the individual benefited thereby, either at the time of such payment or at the time of any subsequent division or distribution of the said fund."

"This provision allows principal to be paid out, in the discretion of the trustees, for the benefit of any of settlor's descendants, and requires that any payments made be

charged against the share of principal represented by the individual benefited. Only if the stirpital scheme of distribution, with the two sons as the heads of the stirped, is adopted is this provision equitable. If a grandchild were to have an interest in the shares of principal from which both sons receive income, then a withdrawal for his benefit could be charged against either or both shares. Thus, for example, as the guardian and trustee ad litem notes, the trustees could charge a payment for the benefit of a child of Herbert against the share of principal represented by Gilbert. The result would be to reduce one son's income by virtue of a payment of principal to his brother's child. In view of his scheme of like treatment for his two sons, it is more reasonable to believe that settlor intended that any payment to a grandchild would be charged against the share of principal from which his own father received income, i. e. he viewed 'the share of principal represented by the individual benefited thereby' as the share for which he or his lineal ancestor received income.

"Finally, Item SIXTH, dealing with the very life of the trust, confirms that settlor was thinking primarily in terms of his children, rather than grandchildren, when he created the trust. The trust is declared to be irrevocable, except that if both his *sons* predecease him, settlor has the power to revoke the trust and direct the disposal of the assets in any way he sees fit.

"   .   .   .

"The circumstances surrounding the settlor in April, 1934 when he established the trust, support our conclusion regarding his intent. His son, Herbert Pleet, was then thirty-four years old, had been married eight years, and had three children, ages one to six. Gilbert Pleet was twenty-nine years old, had been married five years, and had one child, age three. (Stipulation of Facts 1–2.) Both sons were young, had family responsibilities, and might reasonably expect their families to grow in the years ahead. Settlor structured the trust so that after he and his wife died, his sons would be assisted financially; and if one or both of his sons should die, their children would be provided for.

"As the guardian ad litem observes, the results of a distribution other than solely to the children of a deceased son would produce "unnatural and improbable" results. A distribution to the children of both sons upon the death of one would, of course, reduce the amount of principal the fatherless children would receive. They would be left without both the earned income of their father and the income he received from the trust. Yet they would have to split the principal from which their father had been receiving income with their cousins, who would still have a father working to support them and receiving the income from a full one-half of the original trust. "Where words used might under a given construction lead to a result that is highly improbable, the court will lean toward a construction that will carry out the natural intention of the testator." Mayhew's Estate, 307 Pa. 84, 87–88 [160 A. 724] (1932).

"Counsel cited various authorities in support of their arguments. Prior cases and scholarly works are of limited use, however, because in every case the overriding consideration is the intent of the testator or settlor. We will, nonetheless, comment on the authorities most relied on, since we find them not inconsistent with our decision.

"Counsel for the children of Herbert Pleet and their issue maintain that the heads of the stirpes in the disputed paragraph are the grandchildren of settlor, otherwise the word 'equally' in the provision is ignored. They cite *England Estate,* 414 Pa. 115 [200 A.2d 897] (1964), and *Abele Estate,* 34 D. & C.2d 273 (O.C.Phila.1963), *aff'd per curiam,* 416 Pa. 212 [205 A.2d 861] (1965), in support of their position. In both cases the word "equally" was used in phrases similar to the ones here, and the distributions were held to be per capita to the members of the first class of takers of corpus. *England* and *Abele* are clearly distinguishable, however, for in each, corpus was not distributable until the death of the last surviving life tenant. There was a *single* distribution of corpus, and all the members of the class were determined at one time.

"It is not unusual for a parent to give income to his children for life until the death of his last surviving child, and then to give the *corpus* to his grandchildren. Under such a testamentary plan, a gift to grandchildren as a class, of necessity, means a *per capita* distribution." *Abele*, 34 D. & C.2d, at 283, quoting *Rosengarten Estate*, 349 Pa. 32 [37, 36 A.2d 310] (1944).

"Here there is no such testamentary plan. Rather, there is distribution of corpus at the death of *each* life tenant. Under such a plan it would be strange, indeed, for a testator or settlor to provide for distribution of corpus to a child whose parent was still receiving income from the assets remaining in trust. Under the Abraham Pleet deed, the class of remaindermen is determined at two distinct times. As a result, the equality among grandchildren, which counsel for Herbert Pleet's issue so strenuously maintain was settlor's intent, could occur only by chance. It is not assured by the interpretation urged. Such equality would occur only if the surviving son had no children born to him after the death of his brother. If another child were born to the survivor (clearly a possibility), that child would participate only in the second distribution, while those who were alive at the death of both sons would participate in both distributions. It appears, without question, that the equality settlor intended was equality between his sons and their families.

"The most apposite case cited—where a portion of the residuary estate was distributable at the death of each of testator's children (the life tenants), rather than the entire fund being distributable at the death of the last survivor— held that only the children of the deceased life tenant shared in the distribution following his death. *Shoch's Estate*, (No. 2), 271 Pa. 165 [114 A. 505] (1921).

" . . .

[Counsel for the Herbert Pleet family rely on Restatement of Property § 301 (1940) in support of their argument for a per capita distribution to all the grandchildren.] "That section provides that distribution to the members of a class described therein 'is made upon a per capita basis except to

the extent that a different mode of distribution is required . . . (a) for the effectuation of another and different intent of the conveyor found from additional language or circumstances . . . .'

"*Comment g,* listed under the general heading *Comment on Clause(a),* states that the rule of § 301 'is a rule of construction and hence yields to any finding of "another and different intent of the conveyor from additional language or circumstances." ' *Comment a* of § 300 says that the rules of § 300 ** and § 301 are stated separately because . . . in such situations as are dealt with in § 301 *many more* factors tend to establish the " 'different intent of the conveyor' [see Clause (a)] and *thus to eliminate per capita distribution* ; and . . . in such situations as are dealt with in § 301 less evidence is required to establish such a 'different intent of the conveyor" than is required under the rule stated in [§ 300] . . . ' (Emphasis added).

"We have discussed several indicia that a stirpital distribution, with his sons as heads of the stirpes, was intended by settlor. § 301, *Comment j. Contrary intent of the conveyor—Constructional factors* states another specific factor which is squarely on point:

" . . . if the members of the class are of two or more families and the parent of each of these families is given a prior life interest in an equal share in the subject matter of the class gift, this fact tends to establish that those class members who are the children of one life tenant are to take only that share in which the parent life tenant had his interest."

"Thus our conclusion is in accord with both the general principles and a specific example of the *Restatement*."

** Section § 300, entitled DISTRIBUTION—CLASS DESCRIBED BY A SINGLE GROUP DESIGNATION OTHER THAN "ISSUE," "DESCENDANTS," or "FAMILY," deals with conveyances to a group described by the terms " 'children,' 'grandchildren,' 'brothers,' 'sisters,' 'nephews,' 'nieces,' 'cousins,' 'brothers and sisters,' or 'nephews and nieces' of a designated person, or by some other similar single group designation . . . ."

In accordance with *Shoch's Estate* and the *Restatement of Property,* we hold that the portion of corpus distributable as a result of Herbert Pleet's death is to be divided equally among the children of Herbert Pleet only. As indicated by the auditing judge, the controlling element in arriving at this determination has been the intent of the settlor.

■ There remains for disposition appellants' objection to the allocation of the guardian's compensation equally between the share of corpus being distributed and the share continuing in trust.

The allocation of the fees of the guardian and trustee ad litem, including the amount thereof and the source of payment, is a matter largely within the discretion of the Orphans' Court, and unless there is a clear abuse of that discretion, the determination will not be disturbed on appeal. *Bennett Estate,* 366 Pa. 232, 237–38, 77 A.2d 607 (1951); Hunter, *Pa. O.Ct. Commonplace Book,* Vol. II, 10–11 (1959), Partridge, Remick. *Practice and Procedure in the O.Ct. of Pa.,* Vol. V, § 38.04 (1964). The appointment of a guardian and trustee ad litem was essential in this case. For any proceedings before the Orphans' Court to be conclusive, all persons intended and desired to be affected by the final decree must be given appropriate notice and must be, in all respects, sui juris. Thus, appointment of the guardian and trustee ad litem to represent the interests of Gilbert Pleet's minor grandchild and possible unborn issue inured to the benefit of all parties to the litigation. Appellants have not brought to our attention nor do we find an abuse of discretion by the auditing judge in determining the source of payment for the fee of the guardian and trustee ad litem. Accordingly, the decree is affirmed.

Decree affirmed, all parties to pay own costs of appeal.

MANDERINO, J., did not participate in the consideration or decision of this case.

ROBERTS and NIX, JJ., concurred in the result.