**In re Trust Under WILL OF Barclay McFADDEN, Deceased.**

**Appeal of Barclay McFADDEN, Jr., Andrew Alexander McFadden, John McFadden, James S.R. McFadden, Nancy C. McFadden, and Ledyard Heckscher McFadden.**

Superior Court of Pennsylvania.

Argued Nov. 25, 1997.

Filed Jan. 30, 1998.

Arthur R.G. Solassen, Media, for appellants.

Ralph N. Teeters, Philadelphia, for J. Keating Willcox, participating party.

Before McEWEN, President Judge, CAVANAUGH, J., CIRILLO, President Judge Emeritus, and TAMILIA, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT and EAKIN, JJ.

TAMILIA, Judge:

This case comes before us on reargument after a panel of this Court, in a two to one

decision, affirmed the Orphans' Court which dismissed exceptions to an adjudication providing the manner in which the principal and income of a trust, established upon the July 29, 1929 death of Barclay McFadden, Jr., as dictated by his April 20, 1929 will, would be distributed. The provision of the will which gives rise to this appeal is subparagraph (e) of paragraph 11 which directs:

(e) Upon the remarriage of my wife, to divide, monthly, two-thirds of the balance of the income, and upon her death, the whole of the balance of the income, into as many parts or shares as there shall be children of mine living at said periods of monthly distribution, and children of mine then dead, represented by descendants then living, subdividing the shares falling to descendants of deceased children amongst them per stirpes upon the principle of representation, and, until the death of the last survivor of all my children and grandchildren born in my life time, to pay monthly to each child and descendant of a deceased child, then found to be entitled, its share of the income.

Twenty-one years after the death of the last survivor of all of my children and grandchildren born in my lifetime, subject to the life estate of my wife in the whole of the balance of the income, or one-third thereof, as the case may be, and subject to the annuities above mentioned, I direct that the whole of the principal of my residuary estate shall be paid, assigned, transferred and set over to my descendants then living in equal shares, per stirpes upon the principle of representation.

Pursuant to the above provision, the Orphans' Court decreed that one-half of the trust be distributed to the one child of the daughter of the testator, and that one-half of the trust be distributed to the six children of the testator's son.

■■■ Because no testimony was taken in the instant case, our standard of review is limited to determinations of "whether the record is free from legal error and the court's factual findings are supported by the evidence.... Moreover, although our review of the court's factual findings is limited to considering whether those findings have

support in the record, we are not constrained to give the same deference to any resulting legal conclusions." *In re Estate of Geniviva,* 450 Pa.Super. 54, 63–64, 675 A.2d 306, 310 (1996) (citations omitted).

Appellants, the six grandchildren of the testator's son, argue that the trial court erred in concluding the language of the will "to my descendants then living in equal shares, per stirpes upon the principle of representation" directed that the principal of the terminated trust be distributed one-half to one grandchild, appellee, and one-twelfth to each of the other six grandchildren.

Appellee counters that, given the criteria for analysis of a testator's intent as established by the Pennsylvania Supreme Court, the trial court's conclusion regarding the distribution of the trust was correct. We agree.

■■■ Our Supreme Court has stated that, while the pertinent principles of law are well settled, disputes of this nature arise because the application of those principles is sometimes difficult. *In re Burleigh's Estate,* 405 Pa. 373, 175 A.2d 838 (1961). The *Burleigh* court summarized these well settled principles, stating:

It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain[.]

*Id.* at 839 (citations omitted). Furthermore, "[I]t is to be noted that the rules for determining intent are the same for trusts as for wills." *In re Trust Estate of Pleet,* 488 Pa. 60, 68, 410 A.2d 1224, 1228 (1980). In applying this four-part analysis to the case before us, we determine the trial court properly concluded that the testator's intent would be carried out through distribution of the trust in two equal shares, represented by the two

branches of the family headed by the testator's son and daughter, respectively.

The language of the provision indicates such a distribution of the terminating trust was intended. The designation "equal shares" does not stand alone; but rather, it is modified by the phrase "per stirpes upon the principle of representation". As cited by the trial court, several courts that have dealt with this wording have held it to mean, "equal by family, not equal among the grandchildren themselves." *Estate of Pleet, supra; Searles Trust,* 9 Fiduc. Rep.2d 62 (O.C.Div.Phila.1988) ("equality was to apply between the lines of distribution and the principle of representation was to apply thereafter within the lines"); *VanPelt Trust,* 14 Fiduc. Rep.2d 130 (O.C. Div. Montgomery 1994). Upon thorough review of the above-cited cases, we reach an analogous determination regarding the language of the will in this case.

With respect to the scheme of distribution prong of the four-part analysis, we conclude as did the trial court that, because the income from the trust had been distributed through the family branches of the respective parents of appellants and appellee for the life of the trust pursuant to subparagraph (e) of paragraph 11, and because no intent was clearly expressed in the will to change the distribution scheme from per stirpes to per capita at the termination of the trust, the testator's intent provides for distribution of the principal in the same manner as the distribution of income had been accomplished. *See Wanamaker Estate,* 399 Pa. 274, 159 A.2d 201 (1960).

The apparent considerations of the testator, gathered upon examination of his surrounding circumstances at the time he executed his will, indicate a strong concern for the manner in which the needs of his children, rather than grandchildren and great grandchildren, would be met. This is not to say that the testator had no concern whatsoever for his descendants beyond his children. However, because the testator was young and had become a father only a few years prior to his death, it is not unreasonable to say that his primary focus in establishing the trust would be for the well being of his children, with their families secondarily considered and provided for according to their parent's share of the trust. *See Mayhew's Estate,* 307 Pa. 84, 160 A. 724 (1932).

Having considered the presently existing circumstances in conjunction with the above factors, we conclude no error on the part of the trial court was committed. The testator's intent is clearly established and, as such, it is not necessary to resort to any canons of construction. The trust principal was properly distributed with one-half passing to appellee and the remaining half to be distributed among the appellants.

Decree affirmed.

Dissenting opinion by EAKIN, J., in which FORD ELLIOTT, J., joins.

EAKIN, Judge, dissenting:

The issue is what testator intended by the phrase "to my descendants then living in equal shares, per stirpes upon the principle of representation." The "descendants then living" are seven grandchildren, of this there can be no dispute. The specific question is this: do his "descendants then living" get equal shares, or do they divide the shares of now-deceased parents? I cannot agree the intent of the testator was to distribute only the number of shares equal to the number of children he had, a proposition necessary to the majority's conclusion; hence I am constrained to dissent.

The majority finds "in equal shares" means one-half per long-deceased *child,* with "per stirpes" compelling the division of one such half into six smaller parts. I believe "my descendants in equal shares," if it means anything, must mean equally between all grandchildren, and that "per stirpes" refers to distribution of the share of any predeceased grandchild. It is true the per stirpes phrase modifies "my descendants then living in equal shares," but it does not change who those "descendants then living" are. They are his grandchildren, not his children.

As Barclay's plan for final distribution could not take effect until long after his children were deceased, there is no reason to conclude he wished them at the head of the stirp. If he wanted to divide his family in

two, as the majority finds, his scheme would have said so. He would have used the same language he used for distribution of the income where he did just that; there, he speaks of "children" and "to each child and descendant of a deceased child." He specifically enumerates the process for income, "subdividing the shares falling to descendants of deceased children among them per stirpes."

Contrast the language for determining to whom is made distribution of the principal: "my descendants then living." He did not repeat "descendants of deceased children," the scheme used for income; had he done so, I would agree with the majority. Instead, he chose the specific, and distinctly different term "my descendants then living," which change is not to be ignored.

Once a generation of surviving descendents is found, it is only natural to treat them equally, not disparately because of the volume which came from an individual parent. If one grandchild were deceased, it would be natural to divide that share among their heirs, as we have reached a different level; this reasoning has long existed in our intestate laws, and while intestate law doesn't control, its logical scheme is there for good reason. I see no reason to interpret into this will an intent to go to a now-vacant class of descendants, clearly referenced in distribution of income but not referenced at all in the distribution of principal, especially when this interpretation causes a disparate result.

Testator knew that his children would be deceased at the time of distribution of principal. Unlike income, distribution of principal could not occur until they were 21 years gone, at least. For income, he chose to head the stirp with his children, a wish that makes sense. For the final distribution of principal, a different matter altogether, he chose to head the stirp with his "descendants then living" which happened to be his grandchildren. That also makes sense, and that wish should be honored.

If testator wanted to give Christmas presents to his descendants now living in equal shares, would he give equal presents to each of the seven grandchildren, or would he give one to each of his son's children and six to

his daughter's child? Is this the natural presumptive result? Whether he contemplated grandchildren or great-grandchildren, I find his purpose was clearly to treat them equally, putting them and not his deceased children atop the stirp.

While the position of the majority is a thoughtful one, I cannot find it to reflect the intent of this testator, and must dissent.

FORD ELLIOTT, J., joins.