**In re George & Alexander McFadden Testamentary Trusts**

24

*W. Donald Sparks, II,* for objectant Lisa McFadden Melas.

*William T. Hangley,* for Winfield Jones as guardian of the property of Alexander and Wilhelmina McFadden.

*John Guernsey,* for John McFadden, Co-trustee.

*James Mannion,* for BNY Mellon, N.A., Co-trustee.

*Ryan Gager,* for accountants of the trusts.

HERRON, *J.,* April 16, 2013—

Introduction

The objections of Elizabeth McFadden Melas to the accounts filed for the trusts established by George McFadden and Alexander McFadden raise the issue of whether litigation costs incurred by the trustees in their successful defense of a surcharge action brought by two of three beneficiaries should be charged to the trusts as a whole or apportioned solely to the two beneficiaries who initiated that surcharge action. As set forth below, those litigation costs should be borne by the trust as a whole for three reasons. First, the action against the trustees was not limited to surcharge but sought to benefit the trusts as a whole by seeking a division to benefit the differing needs of each beneficiary and by seeking appointment of a third trustee in accordance with the settlors' intent. Second, the litigation was prolonged and complicated by the participation of all three beneficiaries. Third, the surcharge action related to actions that occurred prior to the division of the trusts and thus, if successful, would

have benefited all the beneficiaries. As a matter of equity, the trusts as a whole should bear those attorney fees and litigations costs.

## Factual Background

George McFadden ("George") died unexpectedly in a plane crash on April 22, 2008. Prior to his death, George had been the sole income beneficiary and one of three trustees for trusts that had been established under the wills of his father, Alexander McFadden, and his grandfather, George McFadden. With George's death, the income beneficiaries of these two trusts changed to his three children: Elizabeth McFadden Melas ("Lisa"), Alexander ("Alex") and Wilhelmina ("Willa"). In 2008, Lisa was the adult daughter from George's first marriage, while Willa and Alex were his minor children from his second marriage to Carol ("Carol") McFadden.

Prolonged, intense and highly sophisticated litigation subsequently broke out over the administration of these two trusts. In May 2009, Carol McFadden filed a petition as parent and natural guardian of Willa and Alex seeking to divide the George and Alexander Trusts into three separate trusts for the respective benefit of each of the beneficiaries.[1] Her petition also sought an accounting and the removal of the two surviving trustees, BNY Mellon, N.A. and John McFadden ("John"). It proposed that Carol and David Hamilton be named successor trustees of the divided trusts for Willa and Alex. Finally, it sought to surcharge the trustees John and Mellon for losses suffered by both trusts after the September 2008 stock market crisis and to recover any trustee fees they had charged.

Although the wills of both George McFadden and

---

1. The petitions were filed with the Orphans' Court of Delaware County (the "George Trust") and with the Orphans' Court of Philadelphia (the "Alexander Trust").

Alexander McFadden provided that "there shall be at all times a corporate trustee and two individual trustees,"[2] the two surviving trustees, Mellon and John failed to appoint a third trustee prior to the filing of the objectants' petition or the trustee account. On June 3, 2009, the two surviving trustees filed an account in Philadelphia for the Alexander Trust. That account covered the period May 2, 2006 through February 11, 2009. In Delaware County, an account was filed for the George Trust covering the broader period of September 24, 1985 to June 4, 2009. By decree dated June 15, 2009, the Delaware County McFadden petition and accounting were consolidated with the Philadelphia Alexander Trust action to the extent that they raised similar issues. Willa and Alex filed objections to these first accountings. In March 2010, the trustees filed amended accounts for both the George and the Alexander Trusts.[3] Once again, Willa and Alex filed objections to those amended accounts on June 4, 2010.

Hearings were scheduled to consider the objections. At that first hearing on November 2, 2010, the parties stipulated that the issue as to all attorney fees would be deferred until the complex issues related to surcharge and removal of the trustees had been resolved. 11/2/10 a.m. N.T. at 11 (Mannion).

Shortly into the hearings, this court issued a decree that the George Trust and the Alexander Trust were divided as of November 10, 2010 into three separate trusts for the benefit of each of the individual beneficiaries. The Lisa and Willa Trusts were each to receive one-fourth of the undivided trust assets, while the Alex Trust was to receive

---

2. Ex. P-1, Article Fourth (3) & Article Third; Ex. P-2, Article Third & Article Seventh.

3. The amended Alexander Trust account covered the period February 12, 2009 through December 31, 2009. The amended George Trust account covered the period June 5, 2009 through December 31, 2009.

one-half of those assets as set forth in the wills that had established those trusts. Winfield Jones was named as the third trustee of the trusts for the benefit of Willa or Alexander.

Carol McFadden, as natural guardian of her children, had forcefully called for the division of the trusts from the very beginning of the litigation. Lisa, in contrast, initially opposed division of the trusts. In her July 31, 2009 amended answer to the petition to divide the trusts, Lisa argued:

> Respondent opposes the division of the ABM Trust to the extent that Carol McFadden or David Hamilton are appointed as successor trustee of any of the resulting trusts due to Carol McFadden's many conflicts of interest with the A.B.M. Trust. Upon information and belief, the trustees of the A.B.M. Trust intend to exercise their rights to adjust or to convert the A.B.M. Trust to a unitrust pursuant to Pennsylvania's Principal and Income Act. It is believed that if Carol is appointed trustee of resulting trusts for Wilhelmina and Alexander, due to conflicts of interest and lack of investment expertise there is a substantial risk that the trust assets will be depleted or improperly managed. As trustee, she would have standing to petition the court for a unitrust distribution which is larger than the 4% statutory default percentage. Respondent and her children are contingent beneficiaries of Wilhelmina's and Alex's share of the A.B.M. Trust, and therefore have an interest in precluding the dissipation of trust assets.[4]

As the hearings further progressed, another reason emerged for Lisa's opposition to dividing the trusts: Lisa

---

4. 7/31/09 Lisa amended answer, Alexander McFadden Testamentary Trust, O.C. No. 1129 ST of 1956, ¶10.

did not want her trust to bear alone litigation costs related to a dispute over the exercise of options that George had granted to the trusts as part of loan agreements he had made with the trusts.[5] Lisa's position on dividing the trusts was fluid and contradictory. In her more recent filings, for instance, she asserts that before any of the hearings were held she had proposed a stipulation to divide the trusts so that her trusts could stay outside the litigation. This stipulation was rendered moot, she maintains, after the guardian ad litem filed objections in October 2009 to a division of the trusts.[6]

Shortly before the last day of hearings in March 2011, Willa and Alex McFadden, through their guardian Winfield Jones, filed an amended petition ("amended petition") regarding the George and Alexander Trusts. In that amended petition, Willa and Alex announced their intention to "prosecute their claims, and seek relief, only with respect to the Wilhelmina and Alexander Trusts..." In seeking to preclude Lisa from benefiting from any surcharge they might obtain, Willa and Alex noted that the Lisa Trusts "have opposed and sought dismissal of these proceedings...."[7]

After consideration of the hearings, evidence and numerous filings in this matter, this court refused to impose a surcharge on either John McFadden or Mellon as trustees because the petitioners failed to meet their burden of proving that the trustees' alleged breach of fiduciary

---

5. For a more detailed discussion of these options and the differing views on splitting the George and Alexander Trusts, see the adjudication issued 11/9/11 at 16-17. *See also* Lisa answer, Estate of George McFadden, Deceased, O.C. No. 28 of 1931 (Del. Cty.) ¶¶89-90 (asserting that Lisa and her children would be harmed by the division of the trust due to the affordable options issue).

6. *See* 10/17/12 Lisa brief at 5; 9/12/12 Lisa brief at 2; 4/13/11 Lisa answer to amended petition, Alexander McFadden Testamentary Trust, O.C. No. 1129 ST of 1956, ¶34.

7. 3/21/11 Alex and Willa amended petition, ¶34.

duty caused economic loss to the trust. These two trustees were nonetheless removed from the trusts for the benefit of Willa and Alex for the various reasons set forth in the November 9, 2011 adjudication. The trustees had failed to appoint a third trustee despite the clear language in both wills that there should be three trustees at all times. The trustees had abused their discretion when they cut off the monthly $30,000 distributions to the beneficiaries' UTMA Accounts after their mother refused to supply the trustees with her personal income tax returns. Finally, the trustees breached their duty in failing to raise the termination date of the George Trust as a question for adjudication despite the possibility that date might be as soon as 2012 which might have affected key investment decisions. In reaching these legal conclusions, however, the accounts that had been filed could not be approved because the issue of attorney fees, costs and management fees had been deferred.

After the adjudication issued, an appeal was taken and then withdrawn. The trustees thereafter filed the following amended accounts in July 2012 to frame the remaining legal fees and costs issues:

*Undivided Trusts:*

### George Trust and Alexander Trust

Second and Final Account of the Trust Under the Will of George McFadden for the benefit of Wilhelmina, Elizabeth and Alexander McFadden for the period 11/1/2010 to 3/18/2011 as stated by BNY Mellon, N.A. and John McFadden, Co-Trustees (filed 7/13/12)

Second and Final Account for the Trust under the Will of Alexander McFadden, Deceased, for the Benefit of Elizabeth McFadden, Wilhelmina McFadden and Alexander McFadden for the period 11/1/2010 through 3/18/2011 as stated by John McFadden and BYN

Mellon, N.A., Co-Trustees (filed 7/13/12)

*Divided Trusts:*

## Accounts for the George Trusts

First Account of the Trust Under the Will of George McFadden, Deceased *for the Benefit of Alexander McFadden* for the period 12/23/2010 to 6/21/2012 as stated by Winfield Jones, John McFadden and BNY Mellon, N.A., Co-Trustees (filed 7/13/12)

First Account of the Trust Under the Will of George McFadden, Deceased, *for the benefit of Wilhelmina McFadden* for the period 12/23/2010 through 6/21/2012 as stated by Winfield Jones, John McFadden and BNY Mellon, N.A., Co-Trustees (filed 7/13/12)

First Account of the Trust under the Will of George McFadden, Deceased, *for the benefit of Elizabeth C. M. Melas* for the period 12/23/2010 through 6/21/2012 as stated by George Melas, John McFadden, and BNY Mellon, N.A., Co-Trustees (filed 7/13/12)

## Accounts for the Alexander Trusts

First Account of the Trust Under the Will of Alexander McFadden, Deceased, *for the Benefit of Alexander O. McFadden* for the period 12/24/2010 to 6/21/2012 as stated by Winfield Jones, John McFadden and BNY Mellon, N.A., Co-Trustees (filed 7/13/12)

Income Accumulation Account of the Trust Under the Will of Alexander McFadden, Deceased, *for the benefit of Alexander O. McFadden* for the period 11/1/2010 through 2/27/2012 as stated by John McFadden and BNY Mellon, N.A. Co-Trustees (filed 7/13/12)

First Account of the Trust under the Will of Alexander

McFadden, Deceased, *for the benefit of Wilhelmina McFadden* for the period 12/23/10 through 6/21/2012 as stated by Winfield P. Jones, John McFadden and BNY Mellon, N.A., Co-Trustees (filed 7/13/12)

First Account of the Trust under the Will of Alexander McFadden, Deceased, *for the benefit of Elizabeth McFadden* for the period 12/23/2010 through 6/21/2012 as stated by George Melas, John McFadden and BNY Mellon, N.A., Co-Trustees (filed 7/13/12)

These accounts evoked objections from all of the beneficiaries: Willa McFadden, Alex McFadden and Lisa McFadden as to the attorney fees and costs incurred by Mellon and John McFadden as trustees in the surcharge litigation. Willa and Alex objected to the legal fees and expenses that had been advanced to John McFadden. They also objected to the allocation of the guardian ad litem fees of Mary Jane Barrett, because none of her fees had been allocated to the Lisa trusts. Instead, they maintained, the proper allocation should have been 50% from Alexander's trusts; 25% from Wilhelmina's trusts and 25% from Lisa's trusts.[8] After negotiations, however, Willa and Alex reached a settlement with Mellon and agreed to withdraw their "standing objections" to the legal fees and expenses that had been advanced to Mellon.

Lisa filed very detailed objections to all the legal fees and costs that had been charged against her trusts. These charges were inequitable, Lisa maintained, because from the earliest stages of the dispute she had sought a stipulation to divide the trusts so that her shares of the George and Alexander Trusts would not have to participate in the litigation initiated by Willa and Alex. In her objections, Lisa maintains that she had wanted neither to share in

---

8. *See, e.g.* 8/22/12 Willa and Alexander objections at 1-6.

any surcharge award obtained against the trustees nor to bear any of the attendant legal fees. More specifically, she argued, "none of the relief sought in the combined amended petition could inure to the benefit of the Lisa Trust.[9]

John McFadden subsequently filed a petition for approval of the attorney fees he had incurred in his surcharge defense, and the other parties filed briefs in support of their various positions. An oral argument was held on January 2013. At that hearing, a January 2013 letter from counsel for Willa and Alex was acknowledged for stating that they had reached a settlement with John McFadden as to his litigation fees.[10] The sole issue remaining, therefore, is the allocation of legal fees and costs to Lisa's trusts. In her view, those litigation costs were wrongly charged to her trusts and should have been charged, instead, to the trusts for the benefit of Willa and Alex.

## Legal Analysis

It is undisputed that trustees who wage a successful defense against a surcharge action are entitled to recover their legal fees and costs out of the estate or trust. *In re McGillick Foundation*, 537 Pa. 194, 204, 642 A.2d 467, 472 (1994), *quoting Wormley Estate*, 359 Pa. 295, 300-01, 59 A.2d 98,100 (1948). *See also Estate of Browarsky*, 437 Pa. 282, 285, 263 A.2d 365, 366 (1970). Lisa does not challenge the reasonableness of the attorney fees and costs incurred by the trustees in their defense of the surcharge action even though those litigations costs "amounted to nearly $1,950,000." What she does object to is the imposition of any of these litigation costs on her divided Lisa trusts. Moreover, since certain litigation expenses

9. *See, e.g.* 8/22/12 Lisa objections, George and Alexander Trusts second and final accounts for undivided trusts ¶¶8 & 13.

10. 1/29/13 N.T. at 3-4.

were paid out of the George and Alexander trusts before they were divided, Lisa objects to the amount distributed to her divided trusts from the George and Alexander trusts to the extent that was reduced by the litigation costs.[11] Lisa also maintains that her trusts should not bear any of the fees charged by the guardian ad litem and trustee ad litem who was appointed by decree dated August 26, 2009 to represent Willa, Alex, and "all unborn or unascertained persons who may be interested in the income or principal of the trust" under the Will of Alexander McFadden f/b/o George McFadden.[12] Each of these assertions will be addressed separately.

### I. The Lisa Trust Should Bear Its Proportionate Share of the Litigation Expenses Incurred by the Trustees in their Defense of the Surcharge Action Because of Her Active Participation in the Litigation and the Benefits Derived to the Trusts as a Whole

### A. From the Beginning of the Controversy Over the Accounts for the George and Alexander Trusts, Lisa Took Clearly Defined Adversarial Positions

A continuing refrain in Lisa's arguments against the imposition of the trustees' litigation expenses on her trusts is that she was an innocent bystander to the litigation who early on sought to distance herself from the fray-and the resulting litigation expenses. This argument, however, is refuted by the facts.

Lisa asserts, for instance, that she did not join in the initial petitions seeking to surcharge and remove the trustees because she did not believe the trustees had committed a surchargeable breach and she did not stand to benefit from

---

11. 9/11/12 Lisa brief for George and Alexander Trusts (hereinafter "Lisa brief" at 3 & Ex. A (outlining the attorneys' fees, expert witness fees and court reporter fees charged to the various trusts.

12. 10/3/12 Lisa brief at 3.

the surcharge claim.[13] The surcharge claim, however, was only one aspect of the petition filed on behalf of Willa and Alex. Another key element of their petition called for division of the George and Alexander Trusts into three separate trusts to represent the differing interests or needs of the three new beneficiaries. The petition also called for the appointment of third trustee to succeed George.[14]

Lisa vehemently opposed this proposed division of the George and Alexander Trusts in her early responses to this proposal. She stated, for instance, that she "and her children would be harmed by the division of the trust to the extent that Carol or David Hamilton are appointed as successor trustee of any of the resulting trusts due to Carol's many conflicts of interest with the A.B.M. Trust."[15] More specifically, Lisa feared that trust assets would be dissipated if the trusts were divided:

> It is believed that if Carol is appointed trustee of resulting trusts for Wilhelmina and Alexander, due to conflicts of interest and lack of investment expertise there is a substantial risk that the trust assets will be depleted or improperly managed. As trustee she would have standing to petition the court for a unitrust distribution which is larger than the 4% statutory default percentage. Respondent and her children are contingent beneficiaries of Wilhelmina's and Alexander's share of the A.B.M. Trust, and therefore have an interest in precluding the dissipation of trust assets.[16]

Another reason why Lisa in July 2009 opposed division

---

13. 9/11/12 Lisa brief at 1, 4-5 & 7.

14. *See, e.g.* 5/1/09 petition, Alexander McFadden Testamentary Trust, O.C. No. 1129 ST of 1956 at ¶72-81.

15. 7/30/09 Lisa answer, Alexander McFadden Testamentary Trust, O.C. No. 1129 ST of 1956 (control no. 091921) at ¶89.

16. 7/30/09 Lisa answer, Alexander McFadden Testamentary Trust, O.C. No. 1129 ST of 1956 (control no. 091021) at ¶97.b.

of the trusts was its potential effect on litigation that had broken out over the options her father, George, had given to the Alexander Trust in exchange for loans from the trust:

> Respondent opposes the division of the ABM Trust for the following reasons: Upon information and belief, the trustees of the ABM Trust entered into a loan transaction with George McFadden, the then co-trustee and life tenant of the ABM Trust ("George") on or about November 2006 wherein the ABM Trust loaned George $1,500,000 to enable George to purchase shares of the stock of The Crescent Company, Inc. a Delaware corporation. As part of the loan transaction, and pursuant to an Option Agreement, The Crescent Company, Inc. granted ABM Trust an option to purchase 500.5 shares of stock of the company at a deep discount.... After George died, upon information and belief, George's interest in The Crescent Company, Inc., as sole shareholder thereof passed to his wife, Carol. It is believed that Carol will oppose the exercise of the options in the same manner as she has opposed the exercise of substantially identical options in a different company held in another trust for George's benefit of which George was then the life tenant and co-trustee. Such other options were acquired under substantially similar circumstances as the options held in the ABM Trust. *Because the options are held in the ABM Trust, Respondent opposes the division of the ABM Trust to the extent that such options may be ratably allocated among each of the resulting trusts for Wilhelmina and Alexander. If such options are so allocated, it is believed that the trustees of such trusts would not support the anticipated litigation to compel the exercise of the options, and that Lisa would have to bear the risk and cost of such litigation while only*

*being entitled to one-quarter of the benefit should she succeed in her efforts. Respondent proposes that if the ABM Trust is to be divided, all of the options pertaining to The Crescent Company be allocated to Lisa's share of the trust.*[17]

In contrast to these early filings, Lisa more recently suggests that prior to any hearings she had proposed a stipulation to divide the trusts so that her shares could be kept outside of the surcharge litigation. She then muddies the waters by acknowledging that she "did not join in the Petitions filed by the Petitioners seeking to divide the trusts and surcharge and remove the trustees and did not file any objections to the accounts initially filed by the Trustees" so "[t]herefore she should not be expected to pay for the expenses incurred by the Trustees in responding to and defending against the claims of the Petitioners."[18] The sole evidence she points to of this stipulation to divide the trusts is a letter from her counsel to the court about a scheduling order in which he noted that they had "circulated to counsel a proposed stipulation regarding the division of the trusts" but asked for deferral of any consideration of it because the guardian ad litem had requested more time and none of the other parties seemed to agree with it.[19] This tepid reference to an abandoned stipulation is dramatically contrasted by Lisa's strong, formally filed answers that rejected division of the trusts based on concerns of dissipation of assets and failure to pursue the options litigation.

Lisa invokes the conclusions of Judge Taxis in *Trumbull Trusts*, 8 Fid. Rep. 2d 84 (Mont. Co. O.C. 1988) that a beneficiary who did not seek the division of a trust

17. 7/30/09 Lisa amended answer to petition to divide the trusts, Alexander McFadden, Testamentary Trust, O.C. No. 1129 ST of 1956 (control no. 091443) at ¶10 (emphasis added).

18. *Compare* 9/11/12 Lisa Brief at 2 *with* 5.

19. 10/17/12 Lisa brief, ex. B (letter dated 10/14/2009).

should not be charged with the costs and fees of doing so. *Trumbull*, however, is distinguishable as to the meager facts presented where the trust division was straightforward and unopposed. Here, in contrast, Lisa's shifting positions on the division of the trusts complicated the general litigation to further her own self interests.

There were other instances in which Lisa leapt into the litigation fray. Midway through the hearings in December 20, 2010, she filed a vigorous brief in support of the trustees' motion for nonsuit. She argued that Willa and Alex had failed to provide sufficient evidence that the trustees had violated the Prudent Investor Rule or of a "recognized loss" to serve as the basis of surcharge.[20] When Willa and Alex in February 2011 sought to amend their petition to seek only a surcharge based on their 75% interests, Lisa's rejection of this proposal was emphatic: She asserted that "[a]mending the petition to limit recovery to 75% would be futile as there is no basis for so limiting a recovery due to investment loss of a Trust."[21] She supported this argument by emphasizing that the surcharge claim was directed at the period before the George and Alexander Trusts had been divided into separate trusts for Lisa, Willa and Alex. As a consequence, any recovery for losses would flow to the entirety of the trusts and not just the 75% interest represented by Alex and Willa. Lisa also opposed the amended petition's request for punitive damages against John. Instead, Lisa forcefully argued that punitive damages were not available as a matter of law in a surcharge action against trustees. Finally, she opposed the request for court approved fees for the trustee, Winfield Jones, who had been appointed to represent Willa and

20. 12/21/10 Lisa memorandum in support of mellon's motion for nonsuit and John McFadden's partial motion for compulsory nonsuit at 2.

21. 3/8/11 Lisa memorandum in support of answer to petition for leave to amend pleadings at III.B.1.

Alex.[22] These powerfully presented arguments hardly characterize a party attempting to stay outside the fray of litigation. Rather, they suggest her deep immersion in it.

To support her claim that it would be inequitable for Lisa's trusts to be charged with the litigation costs incurred in the surcharge action, Lisa draws a strained analogy to the "common fund doctrine." She asserts, for instance, that "a beneficiary of a trust will be unjustly enriched if such beneficiary is able to force other trust beneficiaries to bear a portion of the attorney's fees" that the trustees incur in defending themselves from litigation brought solely for the complaining beneficiary's benefit.[23] This common fund analogy, however, is inapposite and throws the proper analysis off kilter. The common fund doctrine under Pennsylvania law occurs "where many persons have a common interest in a trust property, or fund, and one of them, for the benefit of all, at his own cost and expense brings suit for its preservation or administration, the court of equity in which suit is brought will order plaintiff to be reimbursed his costs and expenses, including counsel fees, from the property of the trust, or order those benefitted to contribute proportionately toward that expense." *Wilbur's Estate*, 334 Pa. 45, 73, 5 A.2d 325, 339 (1939). At this point, however, none of the McFadden beneficiaries are seeking to recover fees they personally expended in the surcharge litigation. The key element of the common fund doctrine thus does not apply. Instead, the focus is on whether the trust as a whole should be charged for the litigation expenses of the defending trustees.

A case more to the point is *Stetson's Estate*, 20 Pa. D.& C. 73 (1933) where the court concluded that even where there were conflicting interests among the beneficiaries

22. 3/8/11 Lisa memorandum in support of answer to petition for leave to amend pleadings at III.B.iii and III.B.iv.
23. 9/11/12 Lisa brief at 6.

of a trust, litigation expenses incurred by a guardian defending the interests of the trust's minor remaindermen should fall on the trust as a whole. In *Stetson,* more specifically, a guardian engaged in litigation to protect the interests of a trust's remaindermen from efforts by the trust's income beneficiaries to have certain stock dividends declared income rather than principal. When one of the life beneficiaries subsequently asserted that the fees incurred by the guardian's attorney should be paid by the remaindermen who benefited from them, the *Stetson* court rejected that argument. Conflicting interests among trust beneficiaries are neither uncommon nor unnatural. Where litigation is brought for the general welfare of the trust as a whole, based on the facts and the court's discretion it may be unjust to impose the litigation costs solely on the parties who initiated that litigation while others held back. The conclusion by the *Stetson* court is therefore applicable here: the trust as a whole should bear litigations costs incurred for the general welfare of the trust even where there is disagreement among the beneficiaries who have all taken adversarial roles against each other in that litigation.

B. The *Hyde* Standard Advocated by Lisa Is Factually Inapplicable as Well as Contrary to Her Position If That Standard Were Applied

In seeking to spare her trusts the litigation costs and fees, Lisa admits finding no Pennsylvania cases addressing the precise issue of allocation of attorneys' fees among various beneficiaries of a trust but urges this court to follow New York precedent, *In re: A Trust Created by Hyde,* 15 N.Y. 3d 179, 186, 933 N.E. 2d 194 (2010).[24] The *Hyde* test for allocating costs among trust beneficiaries where some beneficiaries elect not to participate in a surcharge

---

24. 9/11/12 Lisa brief at 8.

recovery is clear, flexible and extremely helpful. On its facts, however, *Hyde* is distinguishable from the McFadden litigation.

In *Hyde*, the beneficiaries of a trust took differing positions on whether to object to an account that had been filed by their trustee. While one family filed objections, the other family of beneficiaries, the Renz family, filed an acknowledgment that they were nonobjectors and as such would not share in any surcharge awarded. They also filed a cross-motion to require that all subsequent litigation fees be deducted from the objectors' share of the trust. *In re Hyde*, 15 NY 3d at 183, 933 NE 2d at 197. The Surrogate Court, bound by prior precedent, rejected the Renz family's position that the litigation costs should be allocated solely to the objecting family. This rigid approach was rejected by the New York Court of Appeals which set forth the following criteria to assist a court in exercising its discretion in deciding on the allocation of litigation costs among beneficiaries:

(1) Whether the objecting beneficiary acted solely in his or her own interest or in the common interest of the estate;

(2) the possible benefits to individual beneficiaries from the outcome of the underlying proceeding;

(3) the extent of an individual beneficiary's participation in the proceeding;

(4) the good or bad faith of the objecting beneficiary;

(5) whether there was justifiable doubt regarding the fiduciary's conduct;

(6) the portions of interest in the estate held by the nonobjecting beneficiaries relative to the objecting

beneficiaries;

(7) the future interests that could be affected by reallocation of fees to individual beneficiaries instead of to the corpus of the estate generally.

*In re: Hyde*, 15 NY 3d at 186-87, 933 N.E. 2d at 199, 906 N.Y.S.2d at 801.

Factually, the nonobjecting family in *Hyde* abstained from the trust litigation over whether the trustees had failed to diversify the trust portfolio. But more than abstaining from the litigation, they took the extra step of filing a written acknowledgment disclaiming any recovery from the surcharge litigation. This factual scenario differs significantly from Lisa's role in the McFadden litigation. Not only did Lisa file highly adversarial answers to the petition initially opposing the division of the trusts, but she joined the trustees' nonsuit petition and objected to the fee request of the guardian for Willa and Alex. Moreover, she did not renounce recovery in any surcharge that might be obtained. Instead, when Willa and Alex amended their petition to recover only their 75% of the trusts, Lisa asserted that any recovery would have been based on injuries to the undivided trusts, which would include her share.[25]

The remaining six other *Hyde* criteria likewise do not lend support to Lisa's position. As for the first criteria— whether the objecting beneficiary acted solely in his or her interest-the surcharge actions brought by Willa and Alex were predicated on the economic harm the trusts suffered before they were divided. As Lisa herself argued, of necessity the surcharge action would have benefited

---

25. *See, e.g.*, 3/9/11 Lisa memorandum in opposition to the amended petition at III.B.i ("Therefore, any recovery for harm that was done to each of the Combined Trusts as a whole must inure to the benefit of each of the Combined Trusts as a whole, and it is futile to amend the pleadings to provide for a 75% limitation on any surcharge recovery").

all three of George McFadden's children if surcharge had been awarded. Under the second element of the *Hyde* test, the litigation initiated on behalf of Willa and Alex had clear benefits for all the beneficiaries. In seeking to divide the trusts, Willa and Alex obtained a division of the trusts that clearly inured to Lisa's benefit. There were also other tangential, but highly significant, benefits that the beneficiaries gained from the litigation. As this court noted in its adjudication, the trustees had been remiss in failing to raise the termination date of the George trust which might have been as early as 2012. Moreover, as a result of the litigation, substitute trustees were named for each of the trusts thereby fulfilling the settlors' intent. The trust assets, as a consequence, were more diversified. The third *Hyde* criteria focusing on the extent of each beneficiary's participation in the proceeding likewise does not benefit Lisa who took the strong adversarial positions described above.

In considering the good or bad faith of the objecting beneficiaries, it is clear that their objections were filed in a good faith belief that the trusts should be divided to meet the differing needs of the beneficiaries and that the trusts had suffered serious losses after the stock market downturn in September 2008. Although this court concluded that Alex and Willa failed to meet their burden of proving that the trustees' breach caused this economic loss, nonetheless the beneficiaries' good faith in asserting their claim was never in doubt. Similarly, given the unique, individualistic investment philosophy adopted by John and George McFadden, the objectants had justifiable doubts regarding the trustees' conduct although their presentation of those doubts was seriously undermined by their focus on John to the exclusion of George McFadden's investment conduct and philosophy.

For all of these reasons, Lisa's objections to the

imposition of attorney fees or litigation costs on her trusts must be denied.

## II. The Guardian ad litem Fees and Costs Should be Allocated to Lisa, Willa and Alex Trusts in their Proportionate Shares

Willa and Alex have filed objections to the allocation of the guardian ad litem fees to their divided trusts alone in the July 2012 accounts.[26] Lisa counters that this allocation is fair because only the Alex and Willa trusts stood to benefit from the surcharge litigation.[27] This argument is belied by the facts and relevant case law.

The allocation of fees incurred by a guardian or trustee ad litem falls within the discretion of the Orphans' Court. *Trust Estate of Pleet*, 488 Pa. 60, 74, 410 A.2d 1224, 1232 (1980). Here, as in *Pleet*, the appointment of a guardian and trustee ad litem was essential. The appointment of a guardian and trustee ad litem was necessary to render the proceedings conclusive and thus benefited all parties in this litigation. *Id.* Moreover, by decree dated August 26, 2009 not only was Mary Jane Barrett named as guardian ad litem for Willa and Alex McFadden but she was also named trustee ad litem "for all unborn and unascertained persons who may be interested in income or principal" under the George McFadden or Alexander McFadden Trusts." That would include Lisa's potential heirs. In fact, Lisa concedes that Ms. Barrett represented the "unborn issue and unascertained beneficiaries in the line of Lisa McFadden Melas."[28]

---

26. *See* 8/22/12 objections by Willa McFadden at 5-6. These objections note that according to the accounts filed in July 2012, on November 25, 2011, $51,838.31 was paid to Mary Jane Barrett from the George Trust f/b/o of Alex; $31,771.87 was paid from the Alexander Trust f/b/o Alex; $25,919.15 was paid from the George Trust f/b/o Willa; and $$15,885.93 was paid from the Alexander Trust f/b/o Willa.

27. *See, e.g.* 10/3/12 Lisa brief at 2-3.

28. 10/3/12 Lisa brief at 3.

For her excellent representation in this difficult case, this court awarded Ms. Barrett guardian and trustee ad litem fees in the amount of $125,000 plus costs of $415.26. As Ms. Barrett suggested, those fees were allocated "62% to the principal of the George Trust and 38% to the principal of the Alexander Trust." According to the accounts filed in July 2012, Mellon allocated 100% of Ms. Barrett's fees to the divided trusts for the benefit of Alex and Willa. This was incorrect. Instead, a proportionate share or 25% of the $125,415.26 should have been allocated to Lisa's trust with the consequential reduction of the fees charged to the Willa and Alex Trusts.

## Conclusion

For all of these reasons, the guardian and trustee ad litem fees should be reallocated among the three trusts for the benefit of Lisa, Willa and Alex in their proportionate shares. Lisa's objections to the attorney fees and legal expenses that were allocated to her trusts are denied.

The practical fate of all the accounts that have been filed must now be addressed. At the beginning of the January 19th hearing, this court raised with counsel the issue of whether the accounts could be confirmed as filed in light of the changes necessitated by the litigation cost settlements that Willa and Alex had worked out with the trustees John McFadden and Mellon. At that point, it was suggested without any objection that an adjustment in the accountings would be required. For this reason, the accounts shall be returned unaudited so that new accounts that accurately reflect the imposition of attorney fees and costs may be filed, but only if the parties elect to do so.